THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |  |
|---|---|---|
| Las Americas Immigrant Advocacy Center, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | Case No. 3:24-cv-00352 |
| | ) | Jury Trial Demanded |
| v. | ) ) | |
| Ken Paxton, in his official capacity as Attorney General of Texas, | ) ) ) | |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Las Americas Immigrant Advocacy Center respectfully submits the following Verified Complaint for Declaratory and Injunctive Relief against Attorney General Ken Paxton and shows as follows:

### I.   INTRODUCTION

1.     Plaintiff Las Americas Immigrant Advocacy Center ("Las Americas") brings this case to protect its constitutional rights to advocate for its immigrant clients and the immigrant community in and around El Paso, Texas. This action is necessary to prevent Las Americas from being the latest in a long string of immigrant service organizations targeted by the Attorney General of Texas, who seeks to harass and intimidate non-profit organizations with which he disagrees.

2.     The Attorney General has served a Civil Investigative Demand ("CID") on Las Americas, inquiring into and seeking production of information contained in client files and

relating directly to the legal services Las Americas provides to its clients. Las Americas seeks nothing more than to carry out its mission to help vulnerable immigrants in need, and this baseless investigation threatens its ability to deliver these already limited legal services. With the institution of this baseless investigation, Las Americas has become ensnared in the Attorney General's most recent dragnet to intimidate and harass organizations that advocate for marginalized communities in an effort to shut down immigration non-profits. The investigation and its attendant harms put Las Americas' First Amendment rights at grave risk.

3.      Being forced to provide confidential client information, as well as the cloud created even by the mere institution of this baseless state investigation, of being under investigation, will chill Las Americas' expressive freedoms, impermissibly restrict it from expressing its viewpoints, and amounts to retaliation for Las Americas petitioning a federal court to restrain the State from enforcing an unconstitutional statute. To ensure it can continue delivering legal and humanitarian services to immigrants, Las Americas requests the Court enter relief on its behalf to protect its First Amendment rights against this intentional overreach and intrusion into its protected activities.

## II.      JURISDICTION AND VENUE

4.      This is a civil rights action arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, federal question jurisdiction.

5.      Venue in this Court is proper under 28 U.S.C. § 1391 because the events or omissions giving rise to the claim occurred in this district. Further, both Plaintiff and Defendant are located in this district.

### III.   PARTIES

6.      Las Americas is a non-profit organization whose mission is to provide high-quality legal services to low-income immigrants. Founded in 1987 by the co-founders of Annunciation House, Las Americas was created to address the unmet legal needs of Central American asylum seekers fleeing civil war. Since its founding, Las Americas has served over 50,000 people from over 77 countries. Its team is often on the frontlines, responding to various humanitarian crises caused by ever-changing immigration policies. Today, Las Americas is one of the few non-profit legal service providers assisting immigrants in the El Paso-Ciudad Juarez area.

7.      Defendant Attorney General Ken Paxton ("Defendant") is the current attorney general of the state of Texas. His office is responsible for sending the CID to Las Americas under the power given to Defendant under Section 17.61 of the Texas Deceptive Trade Practices Act, as well as multiple other investigative demands to immigration-related non-profits over the last several months. He is sued in his official capacity.

### IV.   FACTUAL ALLEGATIONS

**A.  Las Americas' Nonprofit Legal Services and Community Education**

8.      Las Americas is a small, approximately 23-person immigrant legal services organization dedicated to serving the legal needs of low-income immigrants, including asylum seekers, based in El Paso, Texas, with staff members living and working in El Paso, Texas, Santa Fe and Albuquerque, New Mexico, and Ciudad Juarez, Mexico. In 2022, Las Americas received just over $1,210,000 through grants and individual contributions. Las Americas has provided pro bono legal services to immigrants living in, and passing through, the El Paso-Juarez region, including southern New Mexico, for over three decades—and provides the majority of its services on a pro bono basis, with a limited fee schedule applicable to those who are able to pay and who

have stable living conditions. Las Americas does not deny services based on a person's inability to pay.

9.      Las Americas' mission is to provide high-quality legal services to low-income immigrants, and to advocate for human rights.[1] Las Americas focuses its work with vulnerable immigrants on three major areas: community education and individual legal representation in the El Paso, Texas region, including southern New Mexico; community education and legal information in Ciudad Juarez, Mexico; and legal and public advocacy and litigation strategies to defend the rights of immigrants.

10.      Las Americas' Work in the El Paso, Texas Region. In El Paso and Southern New Mexico, Las Americas provides immigration counseling and representation to immigrants seeking work authorization, asylum, family reunification, residency, and citizenship, and to those detained by the U.S. government in and around West Texas and New Mexico, covering all four detention centers located in the El Paso sector of Immigration and Customs Enforcement ("ICE"). Staff provide Know Your Rights presentations to individuals residing in El Paso and Southern New Mexico while their immigration court proceedings are pending, and those passing through temporary shelters in the city, including Annunciation House, Sacred Heart, and Border Servant Corps. These presentations guide individuals through the various types of legal pathways, and how such statuses are obtained while audience members are in the United States. This includes detailed sessions on how to become a citizen for those who qualify for naturalization, and how to qualify for asylum and the steps for applying for asylum. These presentations emphasize the importance of attending all scheduled immigration court hearings and check-ins with ICE personnel, when

---

[1] *Our Mission*, Las Americas Immigrant Advoc. Ctr., https://www.las-americas.org/ (last visited Sept. 24, 2024).

applicable, as well as following all filing deadlines set by the Department of Homeland Security ("DHS") or the U.S. Department of Justice ("DOJ").

11.     In all of its work with community members, Las Americas seeks to serve its mission by utilizing education and zealous advocacy to ensure that individuals have a fair opportunity to establish their eligibility for protection and/or lawful status and are not wrongfully removed to persecution or torture. At all times, Las Americas endeavors to serve as many individuals as capacity and resources permit.

12.     In the El Paso region, Las Americas often encounters individuals who its staff will screen for potential legal relief via community workshops, partner referrals, and sometimes via office walk-ins. These individuals often seek out Las Americas because they have heard of the services it offers from others in the El Paso community. Las Americas relies almost exclusively on client and community referrals for its work.

13.     Las Americas represents hundreds of immigrants each year in their immigration cases or with other related relief. These cases include asylum, naturalization, petitions under the Violence Against Women Act ("VAWA"), petitions for Special Immigrant Juveniles, applications for protection visas, such as trafficking visas, and federal agency complaints. Like all law firms, Las Americas enters into each engagement assuring its clients of its confidentiality obligations under the various professional duties it owes, as well as its obligations under the attorney-client privilege. These fundamental assurances of confidentiality and privilege serve to facilitate an open exchange of information and establish a foundation for the protected attorney-client relationship.

14.     Because Las Americas does not have the resources to provide every potential client it encounters with full legal representation, it must prioritize certain individuals amongst thousands who are deserving of legal assistance. In particular, Las Americas prioritizes individuals with

difficult or unusual asylum claims, people living with disabilities, people with young children, and others who, without the assistance of Las Americas, would not have access to the immigration relief they are entitled to receive, despite the meritorious nature of their claims.

15.    In addition to the above services and its direct representation of immigrants in the El Paso area, Las Americas provides monthly community outreach workshops. Through these workshops, Las Americas can offer more limited legal services to a broader array of eligible community members who qualify for legal services but who, with some assistance, can move forward with their cases without needing full legal representation. Through this work, Las Americas staff enter public locations such as health centers, community centers, libraries, public schools, and churches in order to meet the community where it is and ensure equitable access across diverse socio-economic groups—including people who may themselves be citizens or be present legally in the United States, but who have undocumented family, friends, and neighbors. During these workshops, Las Americas staff provide participants with an agreement that ensures them that Las Americas will maintain the confidentiality of their information. This provides workshop participants with the assurances they need to be open and honest with staff so that Las Americas can provide accurate and complete legal services.

16.    <u>Las Americas' Work in Ciudad, Juarez, Mexico</u>. Las Americas provides free legal information to individuals temporarily residing in Ciudad Juarez, Mexico, who are seeking legal entry into the United States. These Know Your Rights presentations focus on equipping individuals with an understanding of their options for entering the United States at the ports of entry in El Paso, including guiding individuals through the process of applying for humanitarian parole and for appointments to present themselves to CBP under the CBP One phone application.

Las Americas often serves as the very first source of accurate legal information these individuals receive regarding the realities of presenting themselves to United States officials.

17.     The individuals Las Americas assists in Ciudad Juarez, many of whom have spent a long time in migration through Latin America, are often living in squalid conditions in shelters or small apartments, and sometimes on the streets, biding their time and waiting patiently to enter the United States lawfully. During this time, they reside in one of the most dangerous cities in the world to be a migrant. These individuals come from a diverse set of countries, and sometimes have limited proficiency in English and Spanish, making them highly vulnerable to becoming targets as they wait. Amongst this population, young children, LGBTQIA+ individuals, women traveling with young children, and individuals with disabilities are particularly vulnerable, and have historically warranted special consideration by Las Americas.

18.     Occasionally during these Know Your Rights presentations, Las Americas staff will learn of a particularly unique need from a participant. Staff may then screen them for potential legal relief. Examples include: the widow of a United States citizen seeking to attend the funeral of her loved one in the United States, individuals seeking temporary admission to the United States to care for an ailing relative, or a person who has been the victim of trafficking. Typically, Las Americas staff focus on screening individuals who potentially need unique waivers or other complex legal paperwork. These are the circumstances where Las Americas' legal expertise is most valuable. This sometimes leads to Las Americas staff advocating directly with DHS officers on behalf of its clients.

19.     <u>Las Americas' Advocacy and Litigation Work</u>. Las Americas also engages in pro-immigrant advocacy throughout the El Paso area, as well as regionally and nationally. This work largely consists of staff participating in protests, community education events, conferences,

trainings, and other public forums to advocate for the rights of immigrants living in El Paso to further connect with individuals in need of its services. These events provide Las Americas with an opportunity to meet immigrants and their families in a non-stressful environment, in a language they understand best (the vast majority of the time in Spanish), and to gain trust and name recognition with individuals who presently, or in the future, need its assistance. A part of this advocacy includes a media strategy, with high-level staff doing media interviews with print and on-camera media.

20.     As a part of its advocacy program, Las Americas employs strategic or impact litigation as a tool to protect the rights of immigrants in the United States. For example, on December 19, 2023, Las Americas joined with another non-profit immigrants' rights organization and others to sue the State of Texas to enjoin its enforcement of SB4, an anti-immigrant bill that purports to allow Texas state officials to effectuate the removal of individuals from the country. Las Americas and the other plaintiffs successfully obtained a temporary restraining order against the law. *See* Order Granting Preliminary Injunction, *United States, et. al. vs. State of Tex., et al.* (W.D. Tex. Feb. 29, 2024) (No. 1:24-cv-00008-DAE). The case is on appeal.

21.     In addition, after President Biden issued an Executive Order placing severe restrictions on asylum, Las Americas, along with others, sued the federal government alleging the Order violates the Administrative Procedures Act. Shortly after the filing, the State of Texas sought to intervene as a defendant in the matter. The case is pending, as is Texas's intervention motion. *See* Texas' Opposed Motion to Intervene as Defendant, *Las Americas Immigrant Advoc. Ctr., et al. v. U.S. Dep't of Homeland Sec., et al.,* (D.D.C. July 19, 2024) (No. 1:24-cv-01702).

22.     Las Americas' ability to speak boldly to the public about issues affecting immigrants is at the core of Las Americas' mission. Strategic impact litigation is a critical tool that

Las Americas employs to ensure it can fight for the human rights and dignity of immigrants in our nation. In particular, the strategic impact litigation in which Las Americas engages directly affects the day-to-day lives and the futures of the most vulnerable immigrant populations in its region. Las Americas is one of the very few service providers in its region with the structural flexibility to address an ever-changing legal landscape and the inherent fear associated with fighting for ones' own security in the United States immigration system. Any potential obstacles that deter these vulnerable populations from seeking and obtaining legal services threaten this important work. It is critical to Las Americas' mission to engage affirmatively and openly to remove as many obstacles immigrants face to fair access to the immigration system, including through the filing of strategic litigation.

23.     Las Americas' Vulnerable Client Population. Most, if not all, of the individuals Las Americas speaks with in conducting its mission are in difficult positions: some attempting to navigate the opaque and unrelenting bureaucracy of entering the United States, and others, now settled in the United States, attempting to navigate immigration court proceedings and determine what pathways are available to them to remain in the United States lawfully. The individuals Las Americas serves who reside in the El Paso region also have a reasonable fear of encountering immigration enforcement. In particular, in the last year, the City of El Paso, already home to a heavy law enforcement presence, has played host to even more public law enforcement efforts against migrants.

24.     As a legal services organization, Las Americas, like any law firm, treats its confidentiality obligations as paramount. Las Americas' service population has disproportionately experienced abuse from authority figures, their communities, and other individuals in their lives. This history makes building trust with clients, their friends, and their families even more critical

than it would be in the usual attorney-client relationship. The difficulty of these dynamics is compounded by Las Americas' attorneys having such limited time and resources where even the slightest breach in trust can alienate both current and future clients. Breaking trust with any client will inevitably deter other individuals from seeking out Las Americas' services in the future. because The tight-knit community structure in El Paso results in many of Las Americas' clients learning about the organization through word-of-mouth, and even one mention of such a violation would quickly spread in the El Paso immigrant community. Not only does this place the impacted individual at risk, but it also impedes the organization's ability to advocate successfully in the community and to fulfill its mission.

**B.  The Attorney General's Attacks on Immigrant Service Providers.**

25.      In December 2022, Texas Governor Greg Abbott sent a letter to Defendant instructing him to "remain vigilant" of "reports" that "non-governmental organizations . . . have assisted with illegal border crossings near El Paso."[2] Defendant accepted the Governor's edict and, since early 2024, has instituted a series of legal actions targeting and harassing charitable immigration service organizations. These legal actions have been universally condemned by the courts and Defendant has lost in each of them. Nonetheless, Defendant continues to attack non-profit organizations serving immigrants, many that have served the immigrant community for decades.[3] In his campaign of targeted suits, Defendant claimed and continues to claim that these

---

[2] *Letter from Governor Greg Abbott to Att'ny Gen. Ken Paxton*, Governor Greg Abbott (Dec. 14, 2022), https://gov.texas.gov/uploads/files/press/Ken_Paxton_OAG_.pdf.
[3] *See e.g.*, Bernice Garcia, *Tex. Att'ny Gen. Can't Question Catholic Charities Director over Migrant Services, court says*, THE TEX. TRIBUNE (July 24, 2024), https://www.texastribune.org/2024/07/24/texas-border-charities-migrants-attorney-general-investigation-court-r/; Aaron Martinez, *Judge: Texas AG Ken Paxton Failed to Show Probable Grounds to Shut Down Annunciation House*, EL PASO TIMES (July 2, 2024), https://www.elpasotimes.com/story/news/2024/07/02/judge-rules-against-texas-ag-in-battle-against-annunciation-house/74279924007/; Alejandro Serrano, *Judge rejects Ken Paxton's bid to question leader of Brownsville migrant aid organization*, THE TEX. TRIBUNE (Aug. 29, 20204), https://www.texastribune.org/2024/08/29/texas-attorney-general-deposition-migrant-aid-group-brownsville/.

organizations are assisting in or facilitating illegal border crossings and otherwise operating contrary to law despite a complete lack of any evidence.

26.     Defendant has weaponized unprecedented legal strategies against immigrant rights organizations by filing *quo warranto* petitions seeking dissolution of their corporate charters and bringing actions for pre-suit discovery under Texas Rule of Civil Procedure 202. He has also demanded voluminous records and sworn statements under Chapter 12 of the Texas Business Organizations Code ("Chapter 12").

27.     For example, in February 2024, Defendant sent agents to knock on the door and demand production of voluminous documentation related to the identities of immigrants served by Annunciation House, an overnight shelter in El Paso closely associated with Las Americas. Defendant's demands came under the guise of Chapter 12 of the Texas Business Organizations Code. Shortly after receiving the demand, Annunciation House applied to a Texas District Court in El Paso for a Temporary Restraining Order. Annunciation House filed for Declaratory Judgment and an Application for Temporary Injunction. In July 2024, the District Court granted Annunciation House's Motion for Summary Judgment. Judge Francisco X. Dominguez stated: "The record before this Court makes clear that the Texas Attorney General's use of the request to examine documents from Annunciation House was a pretext to justify its harassment of Annunciation House employees and the persons seeking refuge." Order Granting Plaintiff Annunciation House, Inc.'s Traditional and No-Evidence Motion for Final Summary Judgement at 2, *Annunciation House Inc. v. Ken Paxton* (205th Judicial Dist. July 2, 2024) (No. 2024DCV0616). As of the date of this complaint, Defendant's demand to shut down Annunciation House is pending in the Texas Supreme Court.

28.     When Annunciation House resisted cooperation with the request it believed was politically motivated and unlawful, Defendant asserted in court and in the media that Annunciation House staff engaged in "human smuggling" and were "running a stash house," and Defendant sought to have Annunciation House shut down.[4] Defendant's intentionally inflammatory rhetoric forced Annunciation House to defend its reputation in the public eye—despite the fact that a state District Court agreed with Annunciation House that Defendant's requests were unlawful and motivated by animus.

29.     As a direct result of Defendant's targeting of Annunciation House, and out of concern over possible enforcement of SB4, Las Americas made changes to its operations, including updating its security and technology systems, which forced it to divert much-needed financial resources from its core mission of serving immigrants. As part of these upgrades, Las Americas worked to improve its tech security and file storage systems. And, most critically, Las Americas, due to safety concerns for its staff and clients, no longer allows individuals to walk into its office and request services,[5] limiting its reach and the accessibility of its legal resources. These changes were necessary to help ensure the safety of Las Americas' staff and its current and future clients due to the threatening environment created by Defendant.

---

[4] *See, e.g.*, Defendants' Plea to the Jurisdiction, Answer, and Motion for Leave to File [[Proposed]] Counterclaim In the Nature of Quo Warranto, at 6, *Annunciation House, Inc. v. Ken Paxton*, 205th Judicial Dist. (Feb. 16, 2024) (No. 2024DCV0616; Alejandro Serrano, Robert Downen & Vianna Davila, *Judge denies Texas' attempt to shut down El Paso migrant shelter*, THE TEX. TRIBUNE & PROPUBLICA (July 2, 2024), https://www.texastribune.org/2024/07/02/texas-el-paso-annunciation-house-ruling/; Press Release, *Att'ny Gen. Ken Paxton Sues to End NGO's Operations in Tex. After Discovering Potential Efforts to Facilitate Illegal Immigr.*, KEN PAXTON ATT'Y GEN. OF TEX. (Feb. 20, 2024), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-end-ngos-operations-texas-after-discovering-potential-efforts.

[5] Vianna Davila, *Texas' Att'ny Gen. is Increasingly Using Consumer Protection Laws to Pursue Political Targets*, EL PASO MATTERS (May 30, 2024), https://elpasomatters.org/2024/05/30/texas-ag-ken-paxton-annunciation-house-ruben-garcia-consumer-protection-laws/.

30.     The targeting of Annunciation House, the center of the migrant welcoming infrastructure in El Paso for decades, and the parent organization of Las Americas, came as a shock to organizations working with newly arrived migrants in El Paso and across the State of Texas.

31.     The chilling effect that Las Americas and other immigrant rights organizations experienced after Defendant's agents attempted to enter Annunciation House is exactly what Defendant intended. After an El Paso judge granted Annunciation House's Motion for Summary Judgment, *see id.*, Defendant sent out a press release saying, "[a]ll NGOs who are complicit in Joe Biden's illegal immigration catastrophe . . . should consider themselves on notice."[6] These threats to immigrant rights organizations directly threaten the good work these organizations do every day to ensure immigrants are treated with dignity and respect.

32.     In addition to Annunciation House, Defendant has targeted at least three other immigrant service organizations with threats to shut those organizations down for purported illegal activity with no basis in fact.

33.     In April 2024, while the Annunciation House case wound its way through the District Court, Defendant sent a demand to Catholic Charities of the Rio Grande Valley ("CCRGV"), which runs a shelter in McAllen. This demand also cited Defendant's authority under Chapter 12, but requested both to examine documents and take a sworn statement from a representative of CCRGV, tantamount to a deposition. CCRGV initially sought to work cooperatively with Defendant, producing several categories of documents and written responses. Dissatisfied with CCRGV's level of cooperation, Defendant filed a Rule 202 request for pre-suit deposition under the Texas Rules of Civil Procedure. CCRGV opposed the request and State

---

[6] Press Release, *Att'ny Gen. Ken Paxton Seeks Injunction Halting Border NGO's Systemic Criminal Conduct in Tex.*, KEN PAXTON ATT'NY GEN. OF TEX. (May 8, 2024), https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-seeks-injunction-halting-border-ngos-systemic-criminal-conduct-texas.

District Judge Bobby Flores summarily denied Defendant's request. Order Denying Petitioner's Verified Rule 202 Petition to Take Deposition, *In Re Office of the Att'y Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley*, 139th Judicial Dist. (July 3, 2024) (No. C-2639-24-C). Defendant then filed a Writ of Mandamus with the 13th Court of Appeals seeking to overturn this decision, which was later transferred to the new 15th Court of Appeals. Petition for Writ of Mandamus, *In Re Office of the Att'ny Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley* (Tex. App.—Corpus Christi Aug. 23, 2024) (No. 13-24-00419-CV). No ruling has been issued, and CCRGV has requested to have the case transferred back to the 13th Court of Appeals. Catholic Charities of the Rio Grande Valley's Motion to Transfer to the Thirteenth Court of Appeals, *In Re Office of the Att'ny Gen. of the State of Tex, v. Catholic Charities of the Rio Grande Valley* (Tex. App.—Austin Sept. 5, 2024) (No. 15-24-00091-CV).

34.     In May 2024, Defendant targeted another organization, Team Brownsville, Inc., with an investigation letter under Chapter 12 from Defendant. The organization made every attempt to comply and produced documents and spoke with representatives from Defendant's office. Despite this good faith compliance, Defendant demanded a deposition with a corporate representative and, eventually, took the organization to court to request pre-suit discovery under Texas Rule of Civil Procedure 202. After briefing and a hearing on the matter, Judge Maya Guerra Gamble denied Defendant's request for pre-suit discovery. Order Denying Petitioner's Rule 202 Petition, *In re Office of the Att'ny Gen. of the State of Tex. v. Team Brownsville Inc.*, 200th Judicial Dist. (Sept. 3, 2024) (No. D-1-GN-24-004200). No further action has been taken in this case.

35.     Finally, in July 2024, Defendant sought leave to file a *quo warranto* action to dissolve FIEL, a civil rights organization that advocates for just laws for immigrants and their families. In the suit, Defendant argued that FIEL's nonprofit status should be revoked for failing

to comply with rules governing 501(c)(3) entities that limit political activities and endorsement of candidates. After a hearing in early August 2024, State District Judge Ravi Sandill rejected Defendant's arguments, and denied the request for leave to file the *quo warranto*. Order Denying Leave to Proceed Quo Warranto and Order Denying Temporary Injunction, *Ken Paxton and the State of Tex. v. FIEL Houston, Inc.*, 127th Judicial Dist. (Aug. 23, 2024) (No. 2024-43394). Defendant appealed to the Supreme Court of Texas. Plaintiffs Ken Paxton and The State of Texas' Notice of Accelerated Appeal, *Ken Paxton and the State of Tex. v. FIEL Houston, Inc.*, 127th Judicial Dist. (Sept. 11, 2024) (No. 2024-43394).

36.     Defendant follows a familiar pattern in each of his concocted investigations. First, he issues an investigation letter under state law. Then, regardless of whether the entity complies, he expands the scope of his inquiry and pushes for more and more documents and, eventually, a deposition or further investigative material from the organization's representatives. And at some point in the process, Defendant abuses the public platform entrusted to him through press releases or other public statements, vaguely alleging that the organization is involved in illegal or fraudulent activity. He then files legal action and, in two cases, has asked a court to revoke the organization's charter.

37.     These "investigations" linger over these organizations for months, forcing the organizations to consider changing the services they offer or leaving them questioning whether today will be the day Defendant seeks to dissolve their organization.

38.     Each of these successive, baseless, and lingering investigations and legal actions brought by Defendant increased Las Americas' fear that despite operating within the bounds of the law, it would be targeted for investigation. This fear has now come to pass.

**C.  The Attorney General's Civil Investigative Demand Against Las Americas.**

39.     In his years-long campaign against immigrant service providers, Defendant has weaponized his immense regulatory authority to target organizations engaging in speech with which he disagrees.

40.     On September 4, 2024, Las Americas received a CID from Defendant. On its face, the CID states it relates to an investigation regarding "fraudulent and deceptive legal representations and services" under Section 17.61 of the Texas Deceptive Trade Practices Act ("DTPA").

41.     Under the DTPA, the Attorney General's Consumer Protection Division may serve Civil Investigative Demands requesting documents, file civil actions to compel compliance with a CID, file enforcement actions to restrain alleged violations of the DTPA, and bring suits on behalf of consumers or the State for alleged violations. Tex. Bus. & Comm. Code §§ 17.61, 17.62, 17.47.

42.     Ordinarily, and up until 2024, Defendant enforced the DTPA not against legal non-profits, but against large for-profit corporations exploiting consumers for extra profit. Upon information and belief, Las Americas is the first immigration legal services nonprofit to receive an investigative demand under the DTPA from Defendant.

43.     The CID specifically requests the following:

1.  All communications between Las Americas and the United States Department of Homeland Security and/or U.S. Citizenship and Immigration Services concerning the federal Parole Program for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV)[7] during the relevant time period.

2.  All informational documents, forms, and instructions provided by Las Americas to potential or actual immigrants and/or beneficiaries applying for

---

[7] The parole program for Cubans, Haitians, Nicaraguans, and Venezuelans was created by the Department of Homeland Security in 2023, allowing individuals from those countries to apply while still in their home countries for authorization to enter the United States via airplane. Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, https://www.uscis.gov/CHNV (last visited Sept. 24, 2024).

the federal Parole Program for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) during the relevant time period.

3. All informational documents, forms, and instructions provided by Las Americas to potential or actual supporters of and/or sponsors applying for the federal Parole Program for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV) during the relevant period.

4. Part 7 of all Form I-134A documents that Las Americas has participated in preparing.

Las Americas was given until September 27, 2024 to reply.

44.     By its terms, the CID requests documents at the heart of the attorney-client relationship, which are privileged and/or confidential under the Texas Disciplinary Rules of Professional Conduct and federal law.

45.     Request 1, for example, seeks communications with DHS regarding the CHNV program, but Las Americas only communicates with DHS in its capacity as a legal representative for its clients, and then only with the express permission of a client to engage in this communication. In other words, those communications are between DHS and Las Americas on behalf of a client and often relate to information that is highly personal and sensitive in nature.

46.     In the CID, Defendant demands Las Americas, a legal services provider, disclose confidential client documents without probable cause and without a court order. The CID's request is nothing more than an attempt by Defendant to harass, discredit, and intimidate Las Americas, a legal services nonprofit.

47.     Las Americas did not respond to the CID and instead filed this lawsuit.

**D.  The Civil Investigative Demand Threatens Las Americas' Protected Expression and Association.**

48.     The issuance of the CID and notification of an ongoing investigation for purported fraudulent activity, even without producing a single document, have directly chilled Las Americas'

protected expression and association. First, Las Americas has begun self-censoring its attorneys' communications by altering its Know Your Rights Presentations, communications with clients, and media appearances. Second, the CID and investigation have caused Las Americas to self-censor the services it offers to prospective low-income immigrants because the CID focuses on a "controversial" program Defendant dislikes. Third, the CID and investigation severely burdens its ability to associate with other El Paso-area service providers and clients. Fourth, the CID and investigation have caused, and will continue to cause, Las Americas to divert its limited resources away from its mission and services it provides to the public, thereby directly threatening its organizational health.

49.     <u>Because of the CID, Las Americas has Altered and Limited Its Know Your Rights Presentations, Its Communications with Clients, and Its Media Appearances</u>. Las Americas worries that being the target of this CID will damage its ability to continue its mission due to the chilling of its staff's protected expression. With the service of the CID, staff lawyers are unsure about what they can and cannot say in Know Your Rights presentations because they are concerned about whether their actions may expose the organization to further harassment and political attacks by Defendant. Furthermore, the request to produce client information makes Las Americas staff concerned about their ability to guarantee confidentiality during workshops, and whether they now should affirmatively advise individuals that they may not be able to ensure the confidentiality of the potential client's information. This chilling effect has also led Las Americas to discontinue a plan to hire and train Accredited Representatives, who could have helped Las Americas with its work advocating for immigrants in immigration court. All of these will diminish the number of clients Las Americas can serve.

50.     As a result of the CID and ongoing investigation, Las Americas has altered the format of its Know Your Rights presentations. Las Americas has instructed its staff to stop collecting identifying and demographic information about the attendees of its presentations out of fear it will be forced to reveal the identities of people to whom it has given information. Prior to the CID, a Know Your Rights presentation normally ended with an open question-and-answer format in which staff were empowered to answer questions, even those dealing with complex legal concepts, if they were familiar enough with the issue to provide an accurate answer. After the CID, staff are no longer permitted to answer questions. If a question arises in a presentation, staff are instructed to write down the question, which will be reviewed by senior staff, and the participant/potential client will be instructed to return at a later time for a response. If a participant/potential client raises questions related to the CHNV program, staff who were previously empowered to answer questions related the substance of the program are now instructed to tell them Las Americas cannot answer any questions regarding the CHNV program. As a direct result, staff have stopped providing certain legal, accurate information they otherwise would during presentations and in consultations with clients and potential clients, thus depriving potential clients of the information necessary to make well-informed legal decisions about their future.

51.     Las Americas staff are trained to explain and emphasize client confidentiality from the time they make contact with a potential client. This assurance of trust and confidence allows Las Americas staff to provide delicate legal consultation and advice to individuals whom they have just met, or may only have ever met over the phone. Being targeted by Defendant with the CID forces Las Americas staff into a much different position related to those they serve.

52.     In response to the CID, Las Americas sought to comply with the Rules of Professional Conduct and the other duties it owes its client. *See*, *e.g.*, Tex. Disc. R. of Prof.

Conduct, § 1.05(a-b) (State Bar of Tex. 2022) (stating that "[c]onfidential information" includes both "privileged information" and "unprivileged client information" and noting that "a lawyer *shall* not knowingly reveal confidential information of a client or a former client") (emphasis added); Tex. Disc. R. of Prof. Conduct, § 1.05 cmt 4 ("Rule 1.05 also furnishes considerable protection to other information falling outside the scope of the privilege. Rule 1.05 extends ethical protection generally to unprivileged information relating to the client or furnished by the client during the course of or by reason of the representation of the client."). Accordingly, Las Americas attempted to contact the clients whose information was the subject of the CID to advise of the investigation and potential disclosure of their confidential documents.

53.     Instead of assuring clients and potential clients of the confidential nature of their communications with Las Americas, as Las Americas has done for decades, staff will now affirmatively do the opposite and inform clients and prospective clients that confidentiality cannot be assured to them—despite confidentiality being the hallmark of the attorney-client relationship. As a law firm, this cuts to the heart of the legal services Las Americas provides and eviscerates its service model.

54.     Moreover, because staff can no longer guarantee confidentiality to their clients, Las Americas fears this will lead to staff attrition, limiting the staff that Las Americas has to advocate and to execute its mission. These new strictures, occasioned only by Defendant's "investigation," weigh on Las Americas staff and lawyers who prize the ability to speak openly and candidly with clients. Defendant's harassment directly affects and damages the quality of representation that Las Americas staff can provide.

55.     Responding to the CID and ongoing investigation by Defendant has already diverted resources that Las Americas would have used to hire staff to execute certain grant work

in southern New Mexico. If not for the CID, staff would have been hiring and onboarding new staff to conduct Know Your Rights presentations in conjunction with a work permit application workshop that reaches 20 to 30 participants at a time.

56.     Due to the hiring delays directly caused by the receipt of the CID, Las Americas has also been forced to pause intakes for a team that works on addressing abuses in detention facilities. Planned hiring for a staff member for a legal assistant in this position would have allowed Las Americas to conduct multiple intakes a week for this program, rather than being forced to pause intakes for this program, delaying the effectiveness of this program.

57.     Similarly, Las Americas' advocacy work, a critical part of its mission to empower immigrants living in its service area, and to educate the broader public of the issues affecting immigrants in its service area, has been, and will continue to be, chilled by the service of the CID. Las Americas staff at times fielded media requests directly made to them. Because of the CID, staff are now directed to route all requests through Las Americas' Communications Director. Through this new process, Las Americas has declined at least one media interview relating to ongoing investigations by Defendant. Furthermore, local broadcast news outlets occasionally drop in at Las Americas' office for quick on-camera interviews related to immigration legal news, allowing it to reach a segment of the viewing public not familiar with its work. Las Americas previously would engage in these important interview requests, and now, because of the CID, no longer does so.  This shrinking of Las Americas' presence with the media, and this direct curtailment of its protected speech, inhibit Las Americas' ability to be a champion for immigrants' rights and a leader with the media and the public in contravention of its mission and purpose.

58.     Just as Defendant appears to have in part targeted Las Americas because of its association with Annunciation House, Las Americas fears community partners will limit their

association with Las Americas for fear of exposing the community partners' members to adverse action from Defendant. As a result of the CID, Las Americas has advised certain partners they work with, or with whom they have entered into Memorandums of Understanding to share confidential information, of the existence of the CID, to allow them to make the educated decisions as to whether they continue to partner with Las Americas due to the threat of investigation, the allegations of fraudulent activity, and potential disclosure of confidential information.

59.   <u>Because of the CID, Las Americas has Censored and Limited the Services it Offers</u>. The CID and investigation have caused Las Americas to alter how it delivers services to clients. Historically, Las Americas prioritized taking complex immigration cases, such as cases dealing with waivers or other unique fact patterns. Las Americas staff would set appointment times with clients and potential clients, and then receive them in turn at Las Americas' office. However, in response to the CID, Las Americas has changed this process. Now, due to anxiety about receiving its own surprise visit from Defendant's agents, all appointments must be routed through one staffer who screens the individuals to verify their identity and the purpose for their visit. Once the individual has been helped, they are shown out by that same staffer. Las Americas has also changed how it handles people who arrive at its office. Because of the CID, the organization has instructed staff that should anyone attempt to contact or drop off anything unexpected with them in person or at the office, that they must notify management and direct the person to a designated staff member who will handle the person's request or needs. If the person is attempting to serve the organization with legal paperwork, this staffer is must alert high-level staff.

60.   Also, as a result of the CID, Las Americas has altered some of the services it offers, and the organization is considering whether it should further limit its services to more prototypical cases that do not involve such "controversial" subjects like certain federal programs targeted by

the State of Texas, out of concern for the risk this may pose to their clients and potential clients, regardless of the actual legality of the program at issue.

61.     For example, the State of Texas sued the federal government to stop the CHNV program—in the CID, Defendant seeks information from Las Americas about this exact program. Thus far, the state Attorney General plaintiffs in the federal case have been unsuccessful in overturning the program, after the Southern District Court of Texas found that the plaintiff-states lack standing because they are unable to show how they are injured by the program. *Tex. v. United States Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068, at *3 (S.D. Tex. Mar. 8, 2024), *reconsideration denied sub nom., State of Tex. v. United States Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 2888758 (S.D. Tex. May 28, 2024). As a result of Defendant's litigation against CHNV and the issuance of the CID, Las Americas has advised staff that it cannot take any intake or legal requests related to the CHNV program—prior to the CID and ongoing investigation, staff were empowered to do so if capacity allowed.

62.     Las Americas and its staff have closely tracked Defendant's targeting of similar service providers. They know that Defendant has taken the position in pending litigation that providing humanitarian assistance to people without lawful status in the United States amounts to aiding and abetting unlawful entry under federal law and "human smuggling" under Texas law.[8] As a direct result of the CID, in light of Defendant's litigation position, Las Americas staff feel it is in the best interest of the organization and those that it serves to reconsider whether and how to continue its work in Ciudad Juarez. This necessarily involves associating with individuals who have no legal status currently to enter the United States, but who are actively seeking information

---

[8] *See* Defendants' Plea to the Jurisdiction, Answer, and Motion for Leave to File [[Proposed]] Counterclaim In the Nature of Quo Warranto, at 41–42, *Annunciation House Inc. v. Ken Paxton*, 205th Judicial Dist. (Feb. 16, 2024) (No. 2024DCV0616).

about how to do so. This also has made Las Americas staff hesitant to meet with and discuss legal options for those living in the United States who currently may or may not have legal status, but who also may be seeking pathways to do so.

63.     The positions that Defendant has taken in investigating other immigrant service organizations make Las Americas particularly worried that Defendant will use every power at his disposal to continue harassing and trying to intimidate the organization until he successfully censors and limits its speech, advocacy, and activities in El Paso so severely that the organization is essentially shut down.

64.     Las Americas' status as an adverse party to the State of Texas in two lawsuits (the SB4 case and the Biden asylum ban case) compounds this fear and the chilling effect of Defendant's CID and investigation. Defendant's investigation into Las Americas, in fact, appears to be, at least in part, in retaliation for Las Americas' protected activity with its strategic litigation work. The CID and investigation send the unmistakable message that those advocating in the courts against Defendant's desired result, and against laws that Defendant supports, will be harassed, retaliated against, and suppressed. Defendant's conduct would deter many similarly situated organizations from using litigation as a form of advocacy in the future.

65.     Defendant has made clear that he is willing to expend extensive resources on investigations, litigation, and other legal actions to cast doubt on the legality of the very activity that is at the heart of Las Americas' mission: to assist and empower the most vulnerable immigrants living throughout the region it serves. Defendant's attacks on other immigrant service organizations clearly signal to Las Americas that Defendant intends to curtail Las Americas' activities, advocacy, and speech until the organization is an ineffective shell, cutting its clients and

the El Paso and surrounding communities off from one of the very few organizations that provides legal services to undocumented and documented immigrants.

66.     The CID Severely Burdens Las Americas' Ability to Associate with Other Service Providers and Clients. Las Americas worries that being similarly targeted for baseless allegations by Defendant will cause it to suffer reputational damage amongst its most critical clientele—those who seek out Las Americas' legal services, but who may be fearful of doing so knowing that Las Americas may be forced to disclose their documents and/or their association with them. Particularly in El Paso and Southern New Mexico, Las Americas presently works in community centers and other public spaces in neighborhoods consisting of individuals with differing levels of lawful status—from natural-born United States citizens to undocumented individuals. Las Americas fears that the CID will cause a loss of confidence in their relationship with the organization and result in these venues shying away from partnerships with Las Americas, for fear that individuals in these "mixed-status" communities would hesitate to be associated with, and to trust their confidential information to, Las Americas.

67.     If Las Americas were forced to respond to the CID, it would alter the organization and narrow its client base. People approach lawyers on a promise of confidentiality, a promise enshrined in professional ethics rules, constitutional rights, and professional culture. Forcing a legal aid organization to disclose client records turns the historical commitment of attorney-client confidentiality on its head and renders Las Americas unable to keep its ethical commitments to its clients.

68.     Producing client documents in accordance with the CID would function as a scarlet letter within El Paso and Ciudad Juarez. It would deter clients from seeking services from Las Americas in the future and prevent Las Americas from committing to confidentiality in the future.

As noted above, Las Americas has already worked to alert the clients affected by the CID about the investigation and threats to their confidential documents, and Las Americas is providing notice to all clients and potential clients of the CID.

69.     <u>The CID Has Caused Las Americas to Divert Resources Away From Its Mission and Threatens Las Americas' Organizational Health.</u> The CID and surrounding investigation threaten Las Americas' organizational health and force it to divert resources. For example, because the CID is a State-led investigation alleging fraudulent activity by Las Americas, Las Americas was forced to alert its malpractice insurance carrier about the CID and Defendant's investigation into whether it provided "fraudulent and deceptive legal representations and services."

70.     Las Americas has also alerted several of its grantors of the CID. These grantors trust Las Americas and the services the organization provides. The cloud that Defendant's investigation places over Las Americas with his allegations of potential fraudulent activity could result in a loss of faith in Las Americas and a corresponding loss of funding. Being targeted for investigation by Defendant for simply carrying out its mission causes Las Americas to be seen as a risky recipient of donations and puts Las Americas squarely in the crosshairs of Defendant, which concerns Las Americas' donors.

71.     Both individually and taken as a whole, the harms caused by the issuance of the CID and investigation directly threaten Las Americas' ability to engage in protected expression. This Court can, and should, enjoin Defendant's attempts to silence the protected activity of one of the few legal aid organizations serving the El Paso area. This would allow Las Americas to fulfill its organizational purpose without fear of Defendant's retaliatory, coercive, and stigmatizing investigation.

## V.    CLAIMS FOR RELIEF

### Count I: 42 U.S.C. § 1983
### (First Amendment – Retaliation)

72.    All prior paragraphs are reincorporated here by reference.

73.    Section 1983 makes Defendant liable "in an action at law, suit in equity, or other proceeding for redress" when persons suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution" due to Defendant's actions. 42 U.S.C. § 1983.

74.    The First Amendment, as incorporated through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech . . . or the right of the people to peaceably assemble." U.S. Const. Amend. I. These rights lie at "the foundation of a government based upon the consent of an informed citizenry." *Bates v. City of Little Rock*, 361 U.S. 516, 522–23 (1960).

75.    "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "[T]o establish a First Amendment retaliation claim against an ordinary citizen, [plaintiffs] must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Id.* Each element is met in this case.

76.    First, Las Americas was engaged in constitutionally protected activity. Communicating with potential clients or the public about the CHNV program is protected First Amendment activity. So too are efforts by Las Americas to petition the government for relief on behalf of its clients. Finally, advocating for changes to the immigration system represents a type of political speech that is at the heart of First Amendment activity.

77.     Second, a person of ordinary firmness would be chilled by Defendant's actions. The CID is chilling enough given that it represents an effort by Defendant to engage the State's resources and power against Las Americas solely due to Defendant's disagreements with Las Americas' services. However, it also comes after several months of investigations by Defendant against immigration non-profits in the state of Texas. A person of ordinary firmness would reasonably believe, based on Defendant's history, that the CID is only one part of a continuing effort to target immigration non-profits.

78.     Third, Las Americas' expressive speech and association through providing non-profit legal services substantially motivated this retaliatory investigation by Defendant. Defendant has expressed strong distaste for and disagreement with organizations providing legal services to immigrants, knew Las Americas provided such services, and targeted Las Americas exactly because Defendant believes Las Americas provides services under a specific federal immigration program with which he disagrees with. Defendant's retaliatory motive is made all the clearer by Las Americas' litigation activity protecting the rights of immigrants and the fact that there is no precedent for enforcing the DTPA against a nonprofit legal services organization.

79.     Las Americas has already incurred injury due to the environment created by Defendant up to, and including, its service of the CID. And the CID now further cements that injury and adds to it. Las Americas will continue to accrue these and other injuries if Defendant is permitted to continue with this action aimed at, and has already had success at, chilling the speech of immigrant service organizations with which he disagrees, including Las Americas.

## Count II: 42 U.S.C. § 1983
### (First Amendment – Unconstitutional Coercion)

80.     All prior paragraphs are reincorporated here by reference.

81.     The First Amendment, as incorporated against the States through the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983, protects against viewpoint restriction as a result of the actions of government officials. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188 (2024). A government actor can create such a restriction when it uses coercion to target or silence a viewpoint. *Id.* at 188–89.

82.     The CID is one aspect of a campaign to discourage the provision of immigration services. In other words, the content that is restricted is Las Americas' ability to inform its clients about available immigration relief and specifically about the CHNV program, which is a program it does not generally work on.

83.     Defendants' conduct is reasonably coercive so as to be viewed as a restriction on Las Americas' ability to provide immigration services as well as its ability to discuss the CHNV program with current or potential clients. Worse, Defendant has the ability to recommend Las Americas be criminally prosecuted. Further, it is evident from Defendant's efforts in other cases that he is willing to use his investigative authority to attempt to curtail the activities of and shut down progressive non-profits.

84.     To be clear, a CID is sufficiently coercive because it is reasonably viewed as an order from a law enforcement official. More importantly, the CID is coercive because of the effect it had on Las Americas' protected First Amendment activity.

### Count III: 42 U.S.C. § 1983
### (First Amendment – Expressive Association)

85.     All prior paragraphs are reincorporated here by reference.

86.     "[T]he [F]irst [A]mendment protects the right of all persons to associate together in groups to further their lawful interests." *Mote v. Whitehall*, 902 F.3d 500, 507 (5th Cir. 2018). And, "compelled disclosure of affiliation with groups engaged in advocacy may constitute as

effective a restraint on freedom of association as [other] forms of governmental action." *Americans for Prosperity Found. v. Bonta ("APF")*, 141 S. Ct. 2373, 2382 (2021). Government actions which require disclosure of members of a group receive at least "exacting scrutiny," meaning the disclosure requirement must "be narrowly tailored to the government's asserted interest," but need not be "the least restrictive means of achieving their ends." *Id.* at 608 (plurality op.). Once a restriction impinges the rights of expressive association, the restriction must satisfy strict scrutiny, meaning the restriction must serve a "compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox v. Serv. Emps.' Int'l Union, Loc. 1000*, 567 U.S. 298, 310 (2012) (quotation omitted).

87.     The CID unconstitutionally interferes with Las Americas' rights to expressive association. The CID does this by requiring all communications sent to DHS or United States Citizenship and Immigration Services, which would necessarily include confidential documents Las Americas has sent on behalf of clients—revealing those clients' identities and details of their immigration status and history. The risk of disclosing such confidential information will dissuade present and future clients from associating with Las Americas. The issuance of the CID, coupled with Defendant's aggressive pursuit of other immigration nonprofits, has caused Las Americas to alter the way that it interacts with current clients, and contacts potential clients.

88.     The CID also may deter donors from giving funds to Las Americas and partners from associating and working with the organization, further infringing on Las Americas' associational rights.

### Count IV: 28 U.S.C. § 2201
### (Declaratory Judgment)

89.     All prior paragraphs are reincorporated here by reference.

90.     28 U.S.C. § 2201(a) provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"

91.     This case presents an actual controversy between Las Americas and Defendant, as the CID violates Las Americas' First Amendment rights.

92.     Therefore, Las Americas seeks a declaration that the CID violates Las Americas' First Amendment rights, and that its provision of legal information and services, and advocacy on behalf of immigrants in the El Paso-Juarez area and other communities is protected activity under the First Amendment.

## VI.     REQUESTS FOR RELIEF

Las Americas respectfully requests the following relief:

a) A declaratory judgment pursuant to 28 U.S.C. § 2201, declaring the CID violates the United States Constitution under the First Amendment, as incorporated against the states through the Fourteenth Amendment, and that Las Americas' activities are protected under the First Amendment.

b) A preliminary injunction enjoining the Attorney General from enforcing the CID against Las Americas for the pendency of the case.

c) A permanent injunction enjoining the Attorney General from enforcing the CID against Las Americas.

d) An award to Las Americas of costs and attorneys' fees. 42 U.S.C. § 1988(b).

e) Any other and further relief this Court deems just and proper.

Dated: September 25, 2024

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
Scott C. Thomas
Texas Bar No. 24046964
Michael A. Bittner
Texas Bar No. 24064905
Ashley J. Wright
Texas Bar No. 24100390
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
scthomas@winston.com
mbittner@winston.com
ajwright@winston.com

Erin D. Thorn
Texas Bar No. 2409326
Daniel Hatoum
Texas Bar No. 24099136
Kassandra Gonzalez
Texas Bar No. 24116439
**TEXAS CIVIL RIGHTS PROJECT**
P. O. Box 17757
Austin, Texas 78760
(512) 474-5073 ext. 182
(512) 474-0726 (fax)
aron@texascivilrightsproject.org
daniel@texascivilrightsproject.org
kassandra@texascivilrightsproject.org

Travis Walker Fife
Texas Bar No. 24126956
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 1108
Houston, TX 77251
(832) 971-8984 ext. 186

(832) 554-9981 (fax)
travis@texascivilrightsproject.org

*Counsel for Las Americas Immigrant Advocacy Center*