# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| LAS AMERICAS IMMIGRANT ADVOCACY CENTER, | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | EP-24-CV-00352-DCG |
| KEN PAXTON, *in his official capacity as Attorney General of Texas*, | § § § § § | |
| *Defendant*. | § | |

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

On September 4, 2024, the Office of the Texas Attorney General served Plaintiff Las Americas Immigrant Advocacy Center with a Civil Investigative Demand ("CID") commanding Plaintiff to produce various documents by September 27, 2024.[1] Plaintiff has now sued the Attorney General and filed an Emergency Motion for a Temporary Restraining Order ("TRO") seeking to bar his office from enforcing the CID in the immediate future.[2] For the reasons explained below, however, Plaintiff hasn't satisfied the stringent legal requirements for obtaining a TRO. The Court therefore **DENIES** Plaintiff's Motion.

---

[1] *See* CID, ECF No. 3, at 2, 7; Compl., ECF No. 1, at 16–17; *see also infra* Section I.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[2] *See* TRO Mot., ECF No. 5, at 31 (asking the Court to "enter a temporary restraining order enjoining Defendant and his officers, employees, and agents from enforcing the [CID], issuing any other CID related to allegations of fraudulent or deceptive legal representations or services, or otherwise using any authoritative measures to intimidate or harass [Plaintiff], for sufficient time for the Court to issue a preliminary injunction issuing the same relief during the pendency of this litigation").

## I. BACKGROUND

Plaintiff is a non-profit organization that provides legal services to low-income immigrants, including asylum seekers.[3]

On September 4, 2024, the Attorney General's office served Plaintiff with the CID mentioned above.[4] The CID commands Plaintiff to turn the following documents over to the Attorney General's office by September 27, 2024:

(1) "All communications" that:

    (a) occurred between Plaintiff and the United States Department of Homeland Security ("DHS") and/or U.S. Citizenship and Immigration Services ("USCIS") between October 19, 2022 and September 27, 2024; that

    (b) concerned "the federal Parole Program for Cubans, Haitians, Nicaraguans, and Venezuelans" (the "CHNV Parole Program");[5]

(2) "All informational documents, forms, and instructions" that Plaintiff provided between October 19, 2022 and September 27, 2024 "to potential or actual immigrants and/or beneficiaries applying for the" CHNV Parole Program;[6]

---

[3] Compl. at 3.

[4] *See supra* note 1 and accompanying text.

[5] CID at 2–3, 7.

*See also Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, USCIS (Aug. 29, 2024), https://www.uscis.gov/CHNV [hereinafter *CHNV Website*] ("DHS has announced processes through which nationals of Cuba, Haiti, Nicaragua, and Venezuela, and their immediate family members, may request to come to the United States in a safe and orderly way. Qualified beneficiaries who are outside the United States and lack U.S. entry documents may be considered, on a case-by-case basis, for advanced authorization to travel and a temporary period of parole for up to two years for urgent humanitarian reasons or significant public benefit.").

[6] CID at 2–3, 7.

(3) "All informational documents, forms, and instructions" that Plaintiff provided between October 19, 2022 and September 27, 2024 "to potential or actual supporters and/or sponsors applying for the" CHNV Parole Program;[7] and

(4) "Part 7 of all Form I-134A documents that [Plaintiff] has participated in preparing."[8]

The Attorney General's office claims that it needs these documents to investigate "possible violations" of the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA"), including what the Attorney General characterizes as possible "fraudulent and deceptive legal representations and services."[9]

According to Plaintiff, however, the Attorney General's insinuation that Plaintiff may be violating the DTPA is completely baseless.[10] Plaintiff claims that Defendant's putative DTPA investigation is in fact a pretextual attempt to punish Plaintiff for providing advocacy services to

---

[7] *Id.*; *see also CHNV Website* ("Individuals participating in [the CHNV Parole Program] must have a supporter in the United States who agrees to provide them with financial support for the duration of their parole in the United States. The first step in the process is for the U.S.-based supporter to file a Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, with USCIS for each beneficiary they seek to support, including minor children. The U.S. government will then review the supporter information provided in the Form I-134A to ensure that they are able to financially support the beneficiaries they are agreeing to support.").

[8] CID at 2, 7.

Part 7 of Form I-134A requires the preparer to provide the "contact information, declaration, and signature of the person preparing" the Form if the preparer is not "the individual agreeing to financially support the beneficiary." *See Form I-134A, Online Request to be a Supporter and Declaration of Financial Support*, USCIS (July 11, 2023), https://www.uscis.gov/sites/default/files/document/forms/i-134a.pdf.

[9] CID at 2.

[10] *See* TRO Mot. at 19 (claiming that "the entire basis of the CID is a vague and specious statement about the provision of fraudulent and deceptive legal representations and services," and that "[n]othing in the CID specifies what actions [Plaintiff] may have taken to warrant such egregious allegations").

immigrants—and, ultimately, to shut the organization down.[11] Plaintiff further objects that complying with the CID would force the organization to disclose confidential information about its clients.[12]

At 6:58 PM Mountain Time on September 25, 2024—three weeks after Plaintiff received the CID—Plaintiff filed this lawsuit against the Attorney General.[13] Plaintiff accuses the Attorney General of:

(1) violating the First Amendment to the U.S. Constitution by retaliating against Plaintiff for engaging in constitutionally-protected speech and advocacy;[14]

(2) violating Plaintiff's First Amendment right to expressive association by commanding Plaintiff to produce documents that would reveal sensitive information about its clients, including their identities and immigration statuses;[15] and

(3) subjecting Plaintiff to unconstitutional coercion.[16]

Then, at 8:06 PM Mountain Time that same evening, Plaintiff filed the TRO Motion mentioned above.[17] As noted, the Motion asks the Court to temporarily bar the Attorney General from enforcing the CID or taking various other investigative or regulatory actions against Plaintiff.[18]

---

[11] *See* Compl. at 1–2; *see also* TRO Mot. at 8 (characterizing the putative DTPA investigation as an "attempt to harass and bully a non-profit immigration legal services provider out of furthering its mission to serve a vulnerable migrant population" solely because "[Plaintiff]'s mission does not align with Defendant's ideology").

[12] *See* Compl. at 19–20; TRO Mot. at 25–26.

[13] *See* Compl.

[14] *See id.* at 27–28.

[15] *See id.* at 29–30.

[16] *See id.* at 28–29.

[17] *See* TRO Mot.

[18] *See supra* note 2 and accompanying text.

As soon as the courthouse opened on September 26, 2024, the Clerk of Court's office processed Plaintiff's filings and randomly assigned this case to the undersigned Judge. The Court has therefore only had one full business day before the September 27th deadline to consider and rule on Plaintiff's TRO request.

Plaintiff has informed the Attorney General's office about the pending TRO Motion *via* email.[19] Because Plaintiff filed the Motion so close to the September 27th compliance deadline, however, the Attorney General hasn't had a reasonable opportunity to appear in the case and oppose Plaintiff's request.[20]

## II. DISCUSSION

The Court emphasizes that, at this early stage of the case, the Court's role is not to determine whether the parties' accusations against each other are true or false. Rather, the Court's job at this stage is solely to determine whether Plaintiff has satisfied the strict legal requirements for an order that would forbid the Attorney General from enforcing the CID until he has an opportunity to appear in this case and make competing legal arguments of his own.[21] As the Court now explains, Plaintiff hasn't satisfied those demanding prerequisites.

---

[19] *See* TRO Mot. at 32 (certifying that one of Plaintiff's attorneys emailed the Assistant Attorney General who signed the CID to inform him of the filing).

[20] *See id.* (maintaining that the CID threatens Plaintiff with "irreparable harm," and that Plaintiff therefore "could not wait for a response or position from Defendant's counsel" before filing the TRO Motion).

[21] *See, e.g.*, *Sav-Rx Prescription Servs., Inc. v. Drugsite Ltd.*, No. 4:23-CV-3232, 2023 WL 8528464, at *1 (D. Neb. Dec. 8, 2023) (explaining that a TRO "is an emergency measure meant to provide immediate relief until the adverse party can be heard in opposition").

To obtain a TRO, Plaintiff must establish that:

(1) "there is a substantial likelihood that [Plaintiff] will prevail on the merits" of its First Amendment claims against the Attorney General;[22]

(2) "there is a substantial threat that irreparable harm will result if the temporary restraining order is not granted;"[23]

(3) "the balance of equities tips in Plaintiff['s] favor;"[24] and

(4) "a TRO is in the public interest."[25]

A TRO "is an extraordinary and drastic remedy."[26] A court thus may not grant a TRO unless the movant "has clearly carried [its] burden of persuasion on all four" of the factors listed above.[27] Because "[t]he decision to grant a TRO 'is to be treated as the exception rather than the rule,'" "[i]f the movant fails to satisfy any one of the four factors" enumerated above, the Court cannot issue a TRO.[28]

For the following reasons, the unexplained delay between the date that Plaintiff received the CID and the date Plaintiff ultimately filed the TRO Motion precludes Plaintiff from satisfying several of those factors here.

---

[22] *See, e.g.*, *Wiatrek v. Flowers Foods, Inc.*, No. 5:17-cv-00772, 2018 WL 3040583, at *5 (W.D. Tex. June 16, 2018).

[23] *E.g., id.*

[24] *E.g.*, *Grae v. Alamo City Motorplex, LLC*, No. 5:18-CV-664, 2018 WL 4169309, at *6 (W.D. Tex. July 2, 2018).

[25] *E.g., id.*

[26] *E.g.*, *City of Austin v. Kinder Morgan Tex. Pipeline, LLC*, No. 1:20-CV-138, 2020 WL 868160, at *3 (W.D. Tex. Feb. 14, 2020) (quoting *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

[27] *E.g.*, *Def. Distributed v. Grewal*, 368 F. Supp. 3d 1087, 1089 (W.D. Tex. 2018).

[28] *E.g.*, *Elite Med. Lab'y Sols., LLC v. Becerra*, No. 2:22-CV-133, 2022 WL 2704041, at *2 (N.D. Tex. July 11, 2022) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)).

As mentioned, the Attorney General's office served Plaintiff with the CID on September 4, 2024.[29] As of that date, Plaintiff knew everything that it needed to know before it could file this lawsuit and move for a TRO—it knew that the Attorney General was investigating Plaintiff for alleged violations of the DTPA that Plaintiff believes are spurious, it knew that the Attorney General's office had ordered Plaintiff to turn over documents containing information about Plaintiff's clients, and it knew that its deadline to produce those documents was September 27, 2024.[30]

Had Plaintiff promptly filed this lawsuit shortly after receiving the CID on September 4, 2024, the Court would have had plenty of time to make an informed ruling on Plaintiff's TRO Motion. The Court could have set an expedited briefing schedule, given the Attorney General a chance to respond to Plaintiff's arguments, researched and analyzed the governing caselaw, and ruled on the Motion in advance of the September 27th deadline.

For reasons that Plaintiff hasn't explained, however, Plaintiff instead waited until several hours after the courthouse closed on September 25, 2024 to file its lawsuit and move for a TRO—leaving only one full business day between the Motion's filing date and the September 27th deadline.[31] Plaintiff hasn't identified any exigent circumstances that prevented it from moving for a TRO any sooner.[32] For instance, although the TRO Motion mentions that *complying with the CID* by the September 27th deadline has "presented a burden for" Plaintiff due to its "small team and limited resources," Plaintiff hasn't identified any way in which having

---

[29] *See supra* note 1 and accompanying text.

[30] *See* CID at 2, 7.

[31] *See supra* Section I.

[32] *See generally* TRO Mot.

a small team and limited resources prevented Plaintiff from *filing this lawsuit and TRO Motion* closer to the date that Plaintiff received the CID—as opposed to just a few days before Plaintiff's deadline to produce the requested documents.[33]

Last-minute emergency requests for a TRO—where the movant offers no explanation for the belated filing—are "strongly disfavored."[34] That's partly because the "balance of equities" between the parties—which, to reiterate, is one of the four factors a court must consider when deciding whether to grant a TRO[35]—weighs against litigants who wait to ask for a TRO until the eve of the adverse occurrence that they're asking the Court to prevent.[36]

In particular, waiting to request a TRO until the latest possible moment can be inequitable to the defendant. That's because filing a TRO motion "at the eleventh hour"— especially when the plaintiff "could have brought [that] motion earlier"—gives the defendant no "real opportunity to respond" to the plaintiff's request.[37] Last-minute TRO motions thus raise concerns that the plaintiff may obtain an unfair "strategic advantage" by "exclud[ing the] defendants from the TRO briefing, hearing, deliberation and adjudication processes."[38]

---

[33] *See id.* at 21.

[34] *E.g.*, *Jacquelyn S Jordan Tr. v. City of Franklin*, No. 3:22-cv-00326, 2022 WL 1507196, at *1 (M.D. Tenn. May 12, 2022).

[35] *See supra* note 24 and accompanying text.

[36] *See, e.g.*, *Montoya v. Laborers' Int'l Union of N. Am.*, No. CV 10-0891, 2010 WL 1689407, at *2 (D. Ariz. Apr. 23, 2010) ("Based on a review of the Complaint and the motion for a temporary restraining order, it is not at all clear to the Court why Plaintiffs waited until the proverbial '11th hour' to move for injunctive relief, considering the likelihood that Plaintiffs have known about the hearing for over a month, at a minimum. The timing of the motion . . . tips the balance of equities in Defendants' favor."); *Yu v. Queen's Med. Ctr.*, No. 19-00258, 2020 WL 355205, at *8 (D. Haw. Jan. 21, 2020) ("Plaintiff's delay . . . in bringing this TRO Motion . . . factors into the equitable balance.").

[37] *See, e.g.*, *Shores v. Hayashi*, No. 22-00520, 2023 WL 3230926, at *4 (D. Haw. May 3, 2023).

[38] *Levins v. Deutsche Bank Tr. Co. Ams.*, No. 13-0035, 2013 WL 308999, at *2 n.4 (S.D. Ala. Jan. 25, 2013).

Equitable considerations therefore counsel against letting a party effectively deprive the court of "the best possible presentation of the merits of the case on each side"—which, after all, is the "fundamental purpose of the adversary system" of litigation.[39]

To be absolutely clear, the Court isn't accusing Plaintiff of *purposely* filing its TRO Motion at the last minute to obtain a strategic advantage over Defendant. But the fact remains that, irrespective of the reasons for Plaintiff's delay, a party may not "sit on [its] rights[,] only to spring an application for a temporary restraining order on [its] opponents at the eleventh hour."[40]

Besides shifting the "balance of equities," a last-minute TRO request also implicates several of the other TRO factors listed above.[41] As discussed, one of the things that a court must consider when deciding a TRO motion is whether there's "a substantial likelihood that the movant will prevail on the merits."[42] That in turn requires the Court to absorb all of the facts that the plaintiff alleges in its complaint, review and analyze the applicable caselaw, and then evaluate the strength of the plaintiff's claims under governing law. That process often takes

---

[39] *See, e.g.*, *Lee v. Impac Funding Corp.*, No. CV 11-9222, 2012 WL 13012451, at *2 (C.D. Cal. May 24, 2012) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995)).

[40] *See, e.g.*, *Bolbol v. Rowell Ranch Rodeo, Inc.*, 673 F. Supp. 3d 1099, 1101 (N.D. Cal. May 19, 2023).

The Court recognizes that the "balance of equities" factor isn't *solely* about whether Plaintiff has obtained an inequitable advantage by depriving the Attorney General of a meaningful chance to rebut Plaintiff's assertions—the Court must also consider whether "the threatened injury to" Plaintiff "outweighs any harm to [Defendant] that may result from" the requested TRO. *E.g.*, *EKF Diagnostics Inc. v. Intermountain Biomedical Servs. Inc.*, No. 5:18-CV-195, 2018 WL 3603070, at *4 (W.D. Tex. June 18, 2018). As explained below, though, Plaintiff's delay in seeking a TRO also leads the Court to question Plaintiff's assertions about the magnitude and irreparability of the harm it allegedly faces here. *See infra* notes 46–51 and accompanying text.

[41] *See supra* notes 22–23 and accompanying text.

[42] *E.g.*, *Wiatrek*, 2018 WL 3040583, at *5.

more than just one business day—especially where, as here,[43] the plaintiff raises multiple constitutional claims that require complex analysis and careful consideration.[44]  Plaintiff's failure to file its Motion more promptly has therefore made it impossible for the Court to conduct the cautious and difficult analysis necessary to assess whether Plaintiff satisfies the strict legal requirements for a TRO—despite the Court's diligent efforts over the past 28 hours.[45]

Finally, unexplained delays in moving for a TRO can undermine a plaintiff's showing on the "irreparable harm" factor.[46]  To reiterate, a litigant can't obtain a TRO unless it faces "a substantial threat that irreparable harm will result if the temporary restraining order is not granted."[47]  A party who faces "an existential threat" to its mission and survival—as Plaintiff claims to face here[48]—will presumably spring into action and seek relief "as soon as practicable" after discovering that threat.[49]  An "unexplained delay before seeking a TRO," by contrast,

---

[43] *See* TRO Mot. at 11–29 (requiring 18 pages of analysis and numerous case citations to advance Plaintiff's argument regarding its likelihood of success on its three First Amendment claims).

[44] *See, e.g.*, *Kassab v. City of Detroit*, No. 22-cv-12307, 2022 WL 5052640, at *2 (E.D. Mich. Sept. 29, 2022) ("[T]he constitutional claims raised in Plaintiffs' Complaint warrant substantial and careful consideration by the Court, and the Court cannot reasonably perform such an analysis in the extremely compressed time frame created by the Plaintiffs. . . . Plaintiffs' motion for a temporary restraining order is denied." (emphasis omitted)).

[45] *See, e.g.*, *Golden Cheek Ventures, L.P. v. Brazos Elec. Power Coop., Inc.*, No. 4:15-cv-0821, 2015 WL 13469994, at *2 (N.D. Tex. Nov. 10, 2015) ("Golden Cheek has been aware of Brazos Electric's intent to upgrade and construct on the easement . . . since . . . August 2015 . . . . Still, Golden Cheek waited until November 5, 2015, to file a . . . Motion for TRO. . . . Golden Cheek's delay in filing until just six days before construction is set to begin . . . limits the Court's ability to analyze Plaintiff's claims . . . .").

[46] *See supra* note 23 and accompanying text.

[47] *E.g.*, *Wiatrek*, 2018 WL 3040583, at *5.

[48] *See* TRO Mot. at 10; *see also id.* at 23 (asserting that Plaintiff "fears the CID is the beginning of Defendant's attempt to shut down [Plaintiff] or otherwise make its existence in Texas untenable").

[49] *See, e.g.*, *Humana Ins. Co. v. Tenet Health Sys.*, No. 3:16-cv-2919, 2016 WL 6893629, at *38 (N.D. Tex. Nov. 21, 2016).

"implies a lack of urgency and irreparable harm."[50] Thus, whenever a plaintiff "could have brought [a] TRO motion earlier, but instead s[eeks] a TRO at the eleventh hour, giving [the d]efendants no real opportunity to respond," that delay "discredits [the plaintiff's] argument that irreparable injury will result if th[e] Court does not issue" the requested TRO.[51]

For all of those reasons, courts regularly deny last-minute TRO motions if the movant had all the necessary information to move for a TRO several weeks earlier.[52]

That's why the Court must deny Plaintiff's TRO Motion here. Again, Plaintiff was fully aware on September 4, 2024 "of the alleged improper behavior" by the Attorney General that Plaintiff "seeks to restrain" here—"well before [Plaintiff] filed the TRO Motion" on September

---

[50] *E.g.*, *Gritney v. Quema*, No. 22-02010, 2022 WL 18278394, at *2 (C.D. Cal. Nov. 2, 2022) (cleaned up).

[51] *See Shores*, 2023 WL 3230926, at *4.

*See also, e.g.*, *Golden Cheek*, 2015 WL 13469994, at *2 ("[The plaintiff]'s delay in filing [its TRO motion] until just six days before [the adverse event that plaintiff seeks to prevent] . . . militates against a finding of irreparable harm."); *Armstrong v. County of Placer*, No. 2:21-cv-00779, 2021 WL 2258716, at *5 (E.D. Cal. May 3, 2021) ("[P]laintiffs were aware of the impending construction of the [offending] cell tower since at least as early as late March 2021. . . . Plaintiffs then waited [until April 30, 2021] to file suit, moving for a temporary restraining order on the Friday afternoon before the Monday morning when they say construction is due to begin. This delay . . . undercuts plaintiffs' arguments that they will suffer irreparable harm.").

[52] *See, e.g.*, *Johnson v. PennyMac Loan Servs., LLC*, No. 3:23-cv-00875, 2023 WL 5423584, at *2 (M.D. Tenn. Aug. 22, 2023) ("[The TRO] Motion, by which Plaintiff seeks to halt the noticed sale of her home on August 22, 2023 . . . was filed in this Court on the afternoon of August 21, 2023. By her own admission, Plaintiff received written notice of the day, time, and location of the foreclosure sale on or about July 18, 2023 but waited until one day prior to the sale to file her TRO Motion. Such last-minute emergency motions, filed less than 24 hours prior to the event the movant seeks to avert and lacking a convincing explanation for the timing of the request, are strongly disfavored." (cleaned up)); *TDBBS LLC v. Ethical Prods. Inc.*, No. CV-19-01312, 2019 WL 979944, at *1, *5–6 (D. Ariz. Feb. 28, 2019) ("Plaintiff seeks a TRO that would . . . prohibit [the defendant] from promoting its new product line . . . at [upcoming] trade shows . . . . Plaintiff has known about . . . [the defendant's] development of the new product line and plans to attend trade shows for three weeks, yet chose to wait until a few hours before the first trade show began to file its TRO request. That is not the proper way to present a claim for emergency relief that is purportedly necessary to avoid imminent, irreparable injury. . . . Plaintiff's request for a temporary restraining order is denied." (cleaned up) (emphasis omitted)).

25th.[53] Plaintiff thus cannot say that the September 27, 2024 deadline to comply with the CID was a "sudden surprise," such that Plaintiff couldn't have filed the TRO Motion any earlier.[54] Yet Plaintiff has "not offered any persuasive explanation in [its M]otion as to why [it] waited so long before rushing into federal court and claiming an urgent need for immediate relief."[55]

### III.  CONCLUSION

In sum, although Plaintiff "seeks emergency intervention from this Court,"[56] "any emergency" that Plaintiff faces here "is of Plaintiff['s] own making."[57]  "[T]he constitutional claims raised in Plaintiff['s] Complaint warrant substantial and careful consideration by the Court," but "the Court cannot reasonably perform such an analysis in the extremely compressed time frame created by" Plaintiff's failure to file the TRO Motion any sooner.[58]  Furthermore, because Plaintiff's belated filing has deprived Defendant of any meaningful opportunity to weigh in on Plaintiff's TRO request, granting Plaintiff's Motion would be inequitable to Defendant under the circumstances.[59]

For those reasons, the Court **DENIES** "Plaintiff's Emergency Motion for Temporary Restraining Order & Preliminary Injunction" (ECF No. 5).

---

[53] *See, e.g.*, *Tucson Indoor Football LLC v. FBG Enters. Opco LLC*, No. CV-24-00086, 2024 WL 639930, at *2 (D. Ariz. Feb. 15, 2024); *see also supra* notes 29–30.

[54] *See, e.g.*, *Levins*, 2013 WL 308999, at *2 n.4.

[55] *See, e.g.*, *Kassab v. City of Detroit*, No. 22-cv-12307, 2022 WL 5052640, at *2 (E.D. Mich. Sept. 29, 2022); *see also supra* notes 32–33 and accompanying text.

[56] *See* TRO Mot. at 8.

[57] *See, e.g.*, *Kassab*, 2022 WL 5052640, at *2 (quoting *Kotori Designs, LLC v. Living Well Spending Less, Inc.*, No. 2:16-cv-637, 2016 WL 4375274, at *4 (M.D. Fla. Aug. 17, 2016)).

[58] *See, e.g.*, *id*.

[59] *See supra* notes 35–40 and accompanying text.

**So ORDERED and SIGNED this 27th day of September 2024.**

_____
**DAVID C. GUADERRAMA
SENIOR U.S. DISTRICT JUDGE**