UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **LAS AMERICAS IMMIGRANT ADVOCACY CENTER,** § § § § | |
| *Plaintiff*, § | |
| v. § § | **EP-24-CV-00352-DCG** |
| **KEN PAXTON,** § *in his official capacity as Attorney General* § *of Texas*, § § | |
| *Defendant*. § § | |

## ORDER FOR STATUS UPDATE

On September 4, 2024, the Office of the Texas Attorney General served Plaintiff Las Americas Immigrant Advocacy Center with a Civil Investigative Demand ("CID") commanding Plaintiff to produce various documents by September 27, 2024.[1] The Attorney General's office claimed that it needed these documents to investigate "possible violations" of the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA").[2]

---

[1] *See* CID, ECF No. 3, at 2, 7; Compl., ECF No. 1, at 16–17.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[2] *See* CID at 2.

*But see, e.g.*, TRO Mot., ECF No. 5, at 10 (decrying the Attorney General's DTPA investigation as "baseless"); *id.* at 8 (characterizing the investigation as a pretextual "attempt to harass and bully a non-profit immigration legal services provider out of furthering its mission" solely because Plaintiff's "mission does not align with Defendant's ideology").

Plaintiff filed the instant lawsuit against the Attorney General on September 25, 2024.[3] The primary form of judicial relief that Plaintiff seeks in this case is a permanent injunction barring the Attorney General from enforcing the CID against Plaintiff.[4]

About an hour after filing its Complaint, Plaintiff also moved for a temporary restraining order ("TRO") forbidding the Attorney General from taking any of the following actions until the Court could decide whether Plaintiff is entitled to a preliminary injunction against the Attorney General:

(1) enforcing the CID against Plaintiff;

(2) issuing any other CID in furtherance of the Attorney General's DTPA investigation against Plaintiff; or

(3) "otherwise using any authoritative measures to intimidate or harass" Plaintiff.[5]

Shortly after noon on September 27, 2024, however, the Court concluded that "Plaintiff ha[d]n't satisfied the stringent legal requirements for obtaining a TRO" against the Attorney General, and it denied Plaintiff's TRO Motion accordingly.[6]

Plaintiff's September 27, 2024 deadline to comply with the CID has now expired.[7] Depending on what happened after the Court denied Plaintiff's TRO Motion, the dynamics of this case may have shifted significantly. To name the most obvious possibility, if Plaintiff opted to comply with the CID by producing the requested documents, then the primary objective of this

---

[3] *See* Compl. at 32.

[4] *See id.* at 31.

[5] *See* TRO Mot. at 31.

[6] *See* Order Denying TRO, ECF No. 7, at 1.

[7] *See* CID at 2.

lawsuit—namely, to "enjoin[] the Attorney General from enforcing the CID"[8]—may now be moot.

This Court has an obligation to consider on its own motion whether it may still exercise subject matter jurisdiction over this case.[9] If intervening events in a case make it impossible for the Court to grant the plaintiff any effectual form of judicial relief, then the case is moot,[10] and the Court must therefore dismiss the case for want of subject matter jurisdiction.[11] The Court therefore needs Plaintiff to inform the Court:

(1) what (if anything) happened in this case after the Court denied Plaintiff's TRO Motion; and

(2) whether those intervening developments have made it impossible for the Court to grant Plaintiff any effectual relief in this case.

---

[8] *See* Compl. at 31.

[9] *E.g.*, *Couch v. Rogers*, No. 5:19-cv-00954, 2019 WL 6037672, at *1 (W.D. Tex. Nov. 13, 2019) ("This Court has an obligation to evaluate its subject matter jurisdiction at any point in the course of a case and to do so *sua sponte*, meaning on its own motion." (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012))).

[10] *See, e.g.*, *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) ("If an intervening event renders the court unable to grant the litigant 'any effectual relief whatever,' the case is moot." (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996))).

[11] *E.g.*, *Carr v. Saucier*, 582 F.2d 14, 15 (5th Cir. 1978) ("If a controversy becomes moot at any time during the trial or appellate process, the court involved must dismiss the suit for want of jurisdiction."); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("Under [the mootness] doctrine, although a justiciable controversy may have existed at the time litigation was commenced, the action must be dismissed for want of jurisdiction if the controversy ceases to exist at some point in the litigation. Furthermore, a federal court is obligated to raise the issue, *sua sponte*, if the facts suggest mootness notwithstanding the silence of the parties with respect to the issue." (citations omitted)).

That said, even if the *primary* form of relief that a plaintiff is seeking in a case is no longer available due to some intervening event, the case may remain justiciable if there's some *alternative* form of relief that the Court could conceivably award.[12]  "[A]s long as the parties have a concrete interest . . . in the outcome of the litigation, the case is not moot."[13]

Thus, even if it turns out that it's no longer possible to enjoin the Attorney General from enforcing the CID because Plaintiff has already complied with it,[14] there may still be a justiciable dispute between Plaintiff and the Attorney General.  For instance, Plaintiff may still have a concrete interest in preventing the Attorney General from taking further steps in its DTPA investigation against Plaintiff.[15]  If so, then the Court might still be able to award Plaintiff some effectual form of declaratory or injunctive relief against the Attorney General if Plaintiff ultimately prevails on its claims.

---

[12] *See, e.g.*, *Dierlam*, 977 F.3d at 476–77 ("[E]ven when the 'primary relief sought is no longer available,' 'being able to imagine an alternative form of relief is all that's required to keep a case alive.'" (quoting *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547, 553 (7th Cir. 2014), *judgment vacated sub nom. Univ. of Notre Dame v. Burwell*, 575 U.S. 901 (2015))).

[13] *E.g.*, *id.* at 477 (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012)).

[14] *See supra* note 8 and accompanying text.

[15] *See, e.g.*, TRO Mot. at 8 (claiming that both "the CID *and the related investigation* violate [Plaintiff's] First Amendment rights" (emphasis added)); *see also supra* note 2 and accompanying text.

Accordingly, the Court **ORDERS** Plaintiff[16] to **FILE** a status update by **October 15, 2024** that:

(1) informs the Court of any relevant developments that have occurred since the Court denied Plaintiff's TRO Motion on September 27, 2024; and

(2) specifies Plaintiff's position on whether there remains a live, justiciable dispute between Plaintiff and the Attorney General.

If Plaintiff's position is that this case is not moot, Plaintiff **MUST SUPPORT** that position with citations to pertinent legal authority.

**So ORDERED and SIGNED this 30th day of September 2024.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[16] At least at this time, the Court won't order the Attorney General to file a status report of its own, as the docket doesn't currently indicate that Plaintiff has served the Attorney General with process. Although the Clerk of Court has *issued* a summons for the Attorney General, *see* Summons, ECF No. 6, Plaintiff has not yet filed proof that it has *served* the Attorney General with that summons (or, for that matter, with the Complaint), *see* FED. R. CIV. P. 4(c)(1) ("A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by [Federal Rule of Civil Procedure] 4(m) . . . .").