UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **LAS AMERICAS IMMIGRANT** | § | |
| **ADVOCACY CENTER,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **EP-24-CV-00352-DCG** |
| **KEN PAXTON,** | § | |
| *in his official capacity as the Attorney General* | § | |
| *of Texas,* | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## STATUS REPORT

On September 30, 2024, this Court ordered Plaintiff to file a status report to inform the Court: 1) what (if anything) happened in this case after the Court denied Plaintiff's TRO ("Temporary Restraining Order") Motion; and 2) whether those intervening developments have made it impossible for the Court to grant Plaintiff any effectual relief in this case. ECF No. 8, at 3.

Plaintiff submits this Status Report to update the Court accordingly and to show that the case remains an ongoing controversy and that the denial of the TRO did not moot all relief available to Plaintiff.

### I.   Events leading up to and after denial of Plaintiff's TRO Motion.

On September 4, 2024, Plaintiff received a Civil Investigative Demand ("CID") from Defendant, commanding Plaintiff to produce various documents related to the CHNV[1] parole

---

[1] The parole program for Cubans, Haitians, Nicaraguans, and Venezuelans was created by the Department of Homeland Security in 2023, allowing individuals from those countries to apply while still in their home countries for authorization to enter the United States via airplane. *Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, U.S. CITIZENSHIP AND IMMIGR. SERV., https://www.uscis.gov/CHNV (last visited Oct. 7, 2024).

program under the Texas Deceptive Trade Practices – Consumer Protection Act ("DTPA"). ECF No. 1 ¶ 40 ("Complaint"). The CID claimed these documents were needed to investigate violations of the DTPA, including "fraudulent and deceptive legal representation services." *Id.* The CID set a deadline of September 27, 2024 for response. *Id.* ¶ 43.

After receipt of the CID, Las Americas immediately began searching for competent counsel to represent it in this investigation. Ex. 1 ¶ 4 (Decl. of Jennifer Babaie). Las Americas also began to search its records for documents responsive to the demand. *Id.* Despite a diligent search, Las Americas was unable to find local counsel in El Paso or a nonprofit legal services provider with relevant expertise in constitutional law and defending against Attorney General investigations, and without potential conflicts of interest. *Id.*

Las Americas then reached out to the Texas Civil Rights Project ("TCRP"). TCRP was retained to represent Las Americas on September 16, 2024. *Id.*

On September 25, 2024, Plaintiff filed its Complaint and Emergency Motion for TRO and Preliminary Injunction ("PI"). ECF No. 5. Plaintiff reached out to Defendant, advised him of these filings, and attached a copy for review. Thereafter, Defendant agreed to waive service of the complaint and executed a waiver of service on October 2, 2024, which was effective as of September 25, 2024. ECF No. 9. Plaintiff requested that the Court "enter a temporary restraining order enjoining Defendant and his officers, employees, and agents from enforcing the Civil Investigative Demand, issuing any other CID related to allegations of fraudulent or deceptive legal representations or services, or otherwise using any authoritative measures to intimidate or harass Las Americas, for sufficient time for the Court to issue a preliminary injunction issuing the same relief during the pendency of this litigation." ECF No. 5, at 31.

On September 27, 2024—the deadline to respond to the CID, the Court entered its order entitled Order Denying Motion for Temporary Restraining Order. ECF No. 7. Shortly after the Court's Order, Defendant stated via email that his office would be on the lookout for Plaintiff's response to the CID.

Later that day, Plaintiff responded to the CID. In its response, Plaintiff provided a privilege log listing confidential client documents. Decl. of Jennifer Babaie ¶ 5. Plaintiff also explained it does not regularly engage with people eligible for or interested in becoming an immigrant sponsor under the CHNV parole program. *Id*. As a result, Plaintiff informed Defendant it possessed a single email thread responsive to one request in the CID. Plaintiff further stated that its cover letter and privilege log transmitted via email constituted its full and complete disclosure to the CID. *Id.*

As of the date of this filing, Defendant has not contacted Las Americas directly about the specific response provided nor has Defendant moved to further enforce the CID. Defendant's current lack of action does not prevent him from attempting to enforce the CID, moving to compel further materials from Las Americas, or amending the CID to seek additional, unrelated materials touching on other advocacy and legal representation efforts Las Americas routinely engages in during its representation of the populations it serves. *Id.* ¶ 6. Under the DTPA, Defendant can still move to enforce the CID, should he find that Plaintiff's response was inadequate or incomplete. *See* Tex. Bus. & Comm. Code §§ 17.62(b), (c) (allowing the Attorney General's consumer protection division to file a petition for an order of enforcement of a CID in district court).

## II.    Plaintiff continues to suffer ongoing First Amendment harm and a live and justiciable issue remains before this Court.

Plaintiff's case remains live and justiciable. The burden to dismiss a case on mootness grounds is a heavy one to prove and falls on the defendant. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009); *see e.g.*, *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234,

243 (2024). Additionally, when the "primary relief sought is no longer available," "being able to imagine an alternative form of relief is all that's required to keep a case alive." *Dierlam v. Trump*, 977 F.3d 471, 476–77 (5th Cir. 2020) (quotations and citations omitted). So, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id*. at 477.

Here, Plaintiff's case is not moot because: A) Defendant can still move to enforce the CID, potentially forcing Plaintiffs to divulge confidential client information or additional information in violation of its First Amendment Rights, and B) the interim event—responding to the CID—has not "irrevocably eradicated the effects of" the investigation, including Plaintiff's chilled speech. *See Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (an intervening event will render a case moot only if the "effect of the alleged violation is completely eradicated and the event will not occur again") (citations omitted).

### A.  This case remains live and justiciable because Defendant can still move to enforce the CID or expand its scope.

Notwithstanding Plaintiff's response to the CID, the case is not moot because Defendant may still move to enforce the CID or expand its scope. A court must only ask whether a plaintiff's "requested relief is so implausible that it may be disregarded on the question of jurisdiction." *Dierlam*, 977 F.3d at 477 (citations and quotations omitted). And the available remedy at hand need not solve the entire harm or be "fully satisfactory" to escape mootness. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). Rather, a partial remedy, or a lessening of the injury, is sufficient. *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) ("When establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm.")

(quoting *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 318 (1st Cir. 2012)) (quotations omitted).

Plaintiff sought an injunction preventing Defendant from enforcing the CID. Complaint at 31. Defendant remains free to seek enforcement of the CID (Tex. Bus. & Comm. Code §§ 17.62(b), (c)), or it may expand the CID's scope or the scope of the investigation. Plaintiff has received no correspondence indicating the Defendant has closed the investigation. Accordingly, and because the Court could still grant the relief Plaintiff seeks, the case is not moot.

While Defendant has deliberately chosen not to engage regarding Plaintiff's response for now, his conduct constitutes only a voluntary cessation of the challenged conduct. "'[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' even in cases in which injunctive relief is sought." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (citing *Meza v. Livingston*, 607 F.3d 392, 399–400 (5th Cir. 2010) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Voluntary cessation will moot a case "only if it is *'absolutely* clear' that the allegedly wrongful behavior could not be reasonably expected to recur." *Id.* (citations omitted).

In *Speech First Inc.*, the Fifth Circuit observed that some cases have treated voluntary governmental cessation of wrongful conduct with "some solicitude." 979 F.3d at 328. The court nevertheless concluded the case was not moot. *Id.* at 328–29 (noting that without a controlling statement of a future intention, there was no guarantee a university would not reinstate certain policies that chilled speech).

Here, no such "solicitude" should apply where the intentional and bald targeting of nonprofit immigrant organizations with which the Attorney General disagrees deserves no such deference. His conduct in this and other cases are not acts in good faith. And, as in *Speech First*,

*Inc.*, Defendant has issued no controlling statement of future intention. *See id.* Defendant has not indicated his further intentions related to the pending investigation. A review of Defendant's other civil investigations into immigration nonprofit corporations offers telling insight—in every single case Plaintiff knows of, Defendant has refused to close its investigation after the organization responded or attempted to comply, and in several instances, Defendant expanded the scope of the investigation. Complaint ¶¶ 26–38.

For example:

- In response to Annunciation House, Inc. filing a Petition for Declaratory Judgement and Application for Temporary Injunction of Defendant's investigation under the Texas Business Organizations Code in February 2024, Defendant filed a Counterclaim in the Nature of *Quo Warranto* purporting to have the power to revoke Annunciation House's charter.[2] When the court denied Defendant's Counterclaim, Defendant filed an accelerated appeal in the Supreme Court of Texas.[3]

- When Defendant sent a Request to Examine documents to Catholic Charities of the Rio Grande Valley in April 2024, representatives of that organization provided Defendant with extensive documentation regarding his requests and created statements explaining their processes in its efforts to respond to Defendant's requests.[4] Unsatisfied, Defendant attempted to secure pre-suit discovery, including a deposition, against the organization. When a State District Court denied the spurious request, Defendant filed a Writ of Mandamus against the District Court Judge, which remains pending.[5]

- Defendant similarly sent a Request to Examine documents to Team Brownsville, Inc. in May 2024. Team Brownsville similarly attempted to respond and to cooperate. Team Brownsville Inc. provided over 100 pages of documents and discussed the organization's services and mission with Defendant's agents on the

---

[2] Defendants' Plea to the Jurisdiction, Answer, and Motion for Leave to File [[Proposed]] Counterclaim In the Nature of Quo Warranto, at 41–42, *Annunciation House Inc. v. Ken Paxton*, 205th Judicial Dist. (Feb. 16, 2024) (No. 2024-DCV-0616).
[3] Defendant's and Intervenor's Notice of Accelerated Direct Appeal, *Annunciation House Inc. v. Ken Paxton and State of Tex.*, 205th Judicial Dist. (July 15, 2024) (No. 2024-DCV-0616).
[4] Catholic Charities of the Rio Grande Valley's Response and Objections to the Rule 202 Petition, at 3–7, *In Re Office of the Att'y Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley*, 139th Judicial Dist. (July 3, 2024) (No. C-2639-24-C).
[5] Petition for Writ of Mandamus, *In Re Office of the Att'y Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley* (Tex. App.—Corpus Christi Aug. 23, 2024) (No. 13-24-00419-CV).

6

phone.[6] In response to these attempts at cooperation, Defendant filed a request for a pre-suit deposition in State District Court on new, independent topics than the original Request to Examine. *Id.* at 3–5. When the Court refused to grant his request, Defendant filed a Mandamus which remains pending.[7]

- In August 2023 when a State District Court denied Defendant's Complaint in the Nature of *Quo Warranto* against FIEL Houston, Inc. for alleged violations of its 501(c)(3) tax status, Defendant promptly appealed that decision.[8] When FIEL Houston, Inc. raised issues surrounding the new State 15th Court of Appeals' jurisdiction to hear this type of appeal, Defendant filed a Motion for Sanctions against them.[9]

As shown by these examples of his past and current conduct, in the absence of an injunction, Defendant remains free to file an enforcement action, expand the investigation, or issue new, unrelated CIDs seeking even more privileged and confidential client communications and documents. Absent any evidence making it "absolutely clear" Defendant will not resume his behavior in violation of Plaintiff's First Amendment rights, this case is not moot. *See Speech First, Inc.*, 979 F.3d at 328; *see also* Tex. Bus. & Comm. Code §§ 17.62(b), (c) (allowing the Attorney General's consumer protection division to file a petition for an order of enforcement of a CID in district court).

### B. Plaintiff's interim response to the CID did not eliminate the continuing harm of Plaintiff's chilled speech.

Despite responding to the CID, Plaintiff continues to suffer the ongoing harm of chilled speech. An intervening event "will only render a plaintiff's action moot if the plaintiff is divested of all personal interest in the result or the effect of the alleged violation is completely eradicated

---

[6] Respondent Team Brownsville, Inc.'s Response and Objections to Rule 202 Petition to Take Deposition, at 2, *In re Office of the Att'y Gen. of the State of Tex. v. Team Brownsville Inc.*, 200th Judicial Dist. (Aug. 23, 2024) (No. D-1-GN-24-004200).

[7] Petition for Writ of Mandamus, *In Re Office of the Texas Att'y Gen. of the State of Tex.* (Tex. App.—Austin [15th Dist.] Oct. 3, 2024) (No. 15-24-00106-CV).

[8] Order Denying Leave to Proceed Quo Warranto and Order Denying Temporary Injunction, *Ken Paxton and the State of Tex. v. FIEL Houston, Inc.*, 127th Judicial Dist. (Aug. 23, 2024) (No. 2024-43394); Notice of Accelerated Appeal, *Ken Paxton and the State of Tex. v. FIEL Houston, Inc.,* 127th Judicial Dist. (Sept. 11, 2024) (No. 2024-43394).

[9] Appellants' Motion for Sanctions, Ken Paxton, et. al. v. FIEL Houston, Inc. (Tex. App.—Houston [14th Dist.] Sept. 27, 2024) (No. 14-24-00671-CV).

and the event will not occur again." *Dailey*, 141 F.3d at 227 (citation omitted). And chilled speech is "a constitutional harm adequate to satisfy the injury-in-fact requirement." *Speech First, Inc.*, 979 F.3d at 330–31. Here, the effects of the CID and the pending investigation have not been completely eradicated.

As set forth below, Plaintiff's response to the CID has not alleviated its chilled speech, nor has it changed the new procedures it was forced to put in place since the issuance of the CID. Based on Defendant's conduct in this and other cases, Plaintiff continues to feel deterred in its speech and the services it provides in violation of its First Amendment rights. As such, Plaintiff's case remains live.

First, Plaintiff's Know Your Rights ("KYR") presentations remain limited and altered. Decl. of Jennifer Babaie ¶ 8; Complaint ¶ 49–50. Plaintiff's staff lawyers remain fearful about what they can and cannot say, as they do not want to expose the organization to further harassment by Defendant. Decl. of Jennifer Babaie ¶ 8; Complaint ¶ 49. Plaintiff has also been unable to return to having staff answer open-ended questions to address complex immigration issues. Decl. of Jennifer Babaie ¶ 8; Complaint ¶ 50. Staff are also no longer allowed to answer any questions related to the CHNV parole program, the subject of the CID. Decl. of Jennifer Babaie ¶ 8; Complaint ¶ 50. Plaintiff has not backtracked on any of its changes to its KYRs—it continues to reinforce them in the organization even after responding to the CID. Decl. of Jennifer Babaie ¶ 8.

Second, this chilling effect has also negatively impacted Plaintiff's hiring plans. After the issuance of the CID, Plaintiff put its plans on hold to hire two legal assistants and to assist and train existing staff to become Department of Justice Accredited Representatives, who would have helped with advocating for immigrants.  Decl. of Jennifer Babaie ¶ 9; Complaint ¶ 49. After responding to the CID, Plaintiff continues to delay its hiring plan for one of the legal assistant

positions, and the Accredited Representation training is still on hold due to the continued uncertainty around this investigation. Decl. of Jennifer Babaie ¶ 9.

Third, the pending investigation and looming potential actions by Defendant after Plaintiff's CID response continue to threaten client confidentiality. Decl. of Jennifer Babaie ¶ 10; Complaint ¶ 52. Plaintiff has attempted to contact clients whose information and confidential documents could be disclosed due to this CID. Decl. of Jennifer Babaie ¶ 10; Complaint ¶ 52. And staff continue to implement the new policy to inform clients, potential clients, and partner organizations of the investigation and that Las Americas cannot guarantee confidentiality of clients' identity or the information provided because of the pending investigation. Decl. of Jennifer Babaie ¶ 10; Complaint ¶ 53. Plaintiff is a law firm, and the CID and the ongoing investigation go to the heart of the services it provides and building trust with clients who have often undergone trauma. Decl. of Jennifer Babaie ¶ 10. The CID also threatens its ability to comply with its ethical obligations and duties. Decl. of Jennifer Babaie ¶ 11; *see* Tex. Disc. R. of Prof. Conduct §§ 1.05(a-b) (State Bar of Tex. 2022) (". . . a lawyer *shall* not knowingly reveal confidential information of a client or a former client") (emphasis added). The CID continues to directly impact Plaintiff's service model, and the ripple effects of this pending investigation continue to be felt.

Fourth, the CID and pending investigation has continued to harm Plaintiff's advocacy program has forced Plaintiff to adopt a new system for approving interviews and decline at least one media interview so far out of fear of further harassment from Defendant. Decl. of Jennifer Babaie ¶ 12; Complaint ¶ 57. After receiving the CID, Plaintiff required all media requests to go through Plaintiff's Communications Director, and this has not changed since Plaintiff responded to the CID. Decl. of Jennifer Babaie ¶ 12; Complaint ¶ 57. Prior to investigation, staff were free to accept media requests, with the "consultation and input from the Communications Director." Decl.

of Jennifer Babaie ¶ 12. Since responding to the CID, staff have been forced to decline substantive media interviews out of fear of harassment from the Attorney General. *Id.* As long as the investigation remains open and pending, Plaintiff will continue to engage in this self-censorship and decline requested interviews. *Id.* Advocating for immigrants' rights in the public sphere has been paramount to Plaintiff's mission, and Las Americas has been able to combat misinformation and share narratives about its work through media. *Id.* However, with the cloud of the present investigation, the threat of enforcement of the CID, and the specious nature of the investigation, Plaintiff's protected speech remains curtailed. *See id.*

Fifth, Plaintiff has continued to limit the immigration services it provides. Decl. of Jennifer Babaie ¶ 13; Complaint ¶ 59. Since responding to the CID, Plaintiff continues to instruct its staff to route clients and other appointments through one staffer, who is responsible for screening the individual. Decl. of Jennifer Babaie ¶ 13; Complaint ¶ 59. This is for security purposes, as Plaintiff now wants to ensure staff are aware of who is walking into its office. Decl. of Jennifer Babaie ¶ 13. Plaintiff also continues to institute its new procedures requiring staff to identify people before they drop off any documents because "[i]n the current environment, created by the Attorney General's investigations, Las Americas staff feel we simply cannot risk taking walk-ins." *Id.* Plaintiff has no plans to change these procedures. *Id.* Thus, Plaintiff continues to feel the impact of the CID and pending investigation, as is evident in the continuation of its changed procedures. *Id.*

Finally, the effects of the CID and the pending investigation have not been eradicated. Plaintiff's changes to its procedures and service model remain in place. Plaintiff has no plans to stop taking these protective self-censoring measures because the investigation and potential for enforcement of the CID continue to be a threat to its speech and its clients. *Id.* ¶ 14. As a result,

the intervening event of Plaintiff's response to the CID did not remedy or stop the chilling of its First Amendment-protected speech. The case is, therefore, not moot.

### III.    Plaintiffs claims are also ripe for review.

As demonstrated above, Las Americas has shown it has standing. In addition, this case is ripe for review because it continues to suffer realized First Amendment injuries. The heart of ripeness review is the same as its other justiciability arguments—whether there is an injury-in-fact that the court can remedy. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (rejecting a prudential ripeness challenge where plaintiffs had demonstrated an Article III injury).

Cases evaluating document demands from state attorney generals are instructive in evaluating ripeness. In *Google, Inc. v. Hood*, for instance, the Attorney General of Mississippi sent an administrative subpoena to Google, Inc., seeking a range of information including "advertising practices, and knowledge of and efforts to police 'dangerous' or 'illegal' content such as prescription or illicit drug sales, drug abuse, credit card leaks, fraudulent identification documents, human trafficking, and copyright infringement." 822 F.3d 212, 218 (5th Cir. 2016). In this case, Google sued the Mississippi Attorney General, seeking a preliminary injunction to enjoin "bringing a civil or criminal charge against Google under Mississippi law for making accessible third-party content to Internet users" along with declaratory relief stating that the administrative subpoena was non-enforceable. *Id.* at 220–21.

Google initially succeeded before the district judge, but the Fifth Circuit reversed. *Id.* at 228. The Fifth Circuit held that the "administrative subpoena was not ripe for adjudication" because it was "non-self-executing," meaning "the issuing agency could not itself sanction non-compliance," but would, instead, need to bring an action in state court to enforce where Google would then have an opportunity to defend itself. *Id.* at 224–26. Further, as to the injunction and

the First Amendment harms, the Fifth Circuit concluded that Google had failed to show non-speculative and imminent injuries, *Id*. at 227–28, and further, that it was unclear what First Amendment violation existed, if any. *Id*. at 228. The court noted that "invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury." *Id*. Accordingly, *Google* did not successfully show that its case was ripe for judicial review. *Id*.

In contrast, when a CID and its pending enforcement chill First Amendment-protected speech, those harms are no longer speculative, and the CID is ripe for adjudication. *Media Matters for Am. v. Paxton*, 2024 WL 1773197, at *17 (D.D.C. Apr. 12, 2024). In *Media Matters*, Defendant sent a Civil Investigative Demand to Media Matters, Inc. related to the organization's investigation of extremism on X following Elon Musk's purchasing of the social media website. *Id*. at *2. In the press release announcing he was opening an investigation into Media Matters, Inc., Attorney General Paxton described Media Matters as a "radical left-wing organization who would like nothing more than to limit freedom by reducing participation in the public square." *Id*. at *4. Media Matters, Inc. responded with objections and brought suit seeking injunctive relief on the grounds that its First Amendment rights were violated. *Id*. at *1, *4. Importantly, Media Matters, Inc. presented affidavits demonstrating concrete harm to its mission, including: 1) a new culture of fear created by the CID, 2) "internal scrutiny and risk calculation" for articles related to X, and 3) deciding that certain stories about X content moderation may go unreported entirely. *Id*. at 16.

The court concluded that because those harms were realized, and not just speculative, Media Matters suffered an injury-in-fact sufficient to allege the case was justiciable. *Id*. at *15–16. In doing so, it distinguished *Google v. Hood*. Attorney General Paxton had argued that the *Hood* case showed that the case was not ripe because the CID was not self-executing. *Id*. at *17. The court, however, found that *Hood* was inapposite because the *Hood* court did not have before

it "self-censorship and other chilling effects experienced by a media organization and journalist." *Id.*; *see also id.* at \*16 ("Through sworn affidavits, Plaintiffs have demonstrated the profound chilling impact that the CID has had on its news operations and journalistic mission.").

Thus, unlike in *Hood*, where there is evidence of self-censorship and other chilling effects, as there are here, the case is ripe for review. *Id.*; *see also Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1179 n.3 (9th Cir. 2022) ("Although the First Amendment was at issue in [*Hood*], the court did not recognize that Google could have suffered injury in the form of objectively reasonable chilling of its speech or another legally cognizable harm from the CID even prior to the CID's enforcement.").

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
Scott C. Thomas
Texas Bar No. 24046964
Michael A. Bittner
Texas Bar No. 24064905
Ashley J. Wright
Texas Bar No. 24100390
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
scthomas@winston.com
mbittner@winston.com
ajwright@winston.com

*/s/ Erin D. Thorn*
Erin D. Thorn (State Bar No. 24093261)
Daniel Hatoum (State Bar No. 24099136)

Kassandra Gonzalez (State Bar No. 24116439)
**TEXAS CIVIL RIGHTS PROJECT**
P. O. Box 17757
Austin, Texas 78760
(512) 474-5073 ext. 182
(512) 474-0726 (fax)
aron@texascivilrightsproject.org
daniel@texascivilrightsproject.org
kassandra@texascivilrightsproject.org

Travis Walker Fife (State Bar No. 24126956)
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 1108
Houston, TX 77251
(832) 971-8984 ext. 186
(832) 554-9981 (fax)
travis@texascivilrightsproject.org

## CERTIFICATE OF SERVICE

On October 15, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Thomas M. Melsheimer*