# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF TEXAS – EL PASO DIVISION

| | |
|---|---|
| Las Americas Immigrant Advocacy Center, *Plaintiff*, v. W. KENNETH PAXTON, in his official capacity as Attorney General of Texas, *Defendants*. | Civil Action No. 3:24-cv-00352 |

**DEFENDANT W. KENNETH PAXTON'S MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND ............................................................................................................1

    A. Reports of Fraud in the CHNV Program ...........................................................1

    B. Las Americas' Involvement in the CHNV Program...........................................2

    C. OAG's Issuance of an Administrative Subpoena to Las Americas....................3

    D. Las Americas' Eleventh-Hour Attempt to Halt OAG's Investigation ................4

    E. Las Americas' Response to the CID ...................................................................5

III. ARGUMENT...................................................................................................................6

    A. The Court Should Sanction Las Americas for its Misrepresentations to the Court ........................................................................................................6

        i. Las Americas Misrepresented the Effect of the CID on its Operations ................................................................................................6

        ii. The Court should Sanction Las Americas for its Misrepresentations about the CID's Effect on its Press Appearances...............................8

        iii. The Court Should Sanction Las Americas for its Misrepresentation That Compliance with the CID was so Burdensome that it would Compromise Organizational Health ..................................................8

    B. The Court Should Sanction Las Americas for Failing to Disclose that Binding Precedent Foreclosed its Suit..............................................................................9

    C. Sanctions Should Include an Order that Las Americas Pay a Penalty for its Failed Candor....................................................................................................12

IV. CONCLUSION..............................................................................................................12

CERTIFICATE OF SERVICE .................................................................................................14

# INDEX OF AUTHORITIES

**Cases**                                                                                                                                 **Page(s)**

*Avila v. State*,
  252 S.W.3d 632 (Tex. App.—Tyler 2008) ................................................................ 3

*Barth v. District of Columbia*,
  1993 WL 523999 (D.C. Cir. Dec. 14, 1993) ............................................................ 11

*Belle Fourche Pipeline Co. v. United States*,
  751 F.2d 332 (10th Cir. 1984) ................................................................................. 10

*Borowski v. DePuy, Inc.*,
  850 F.2d 297 (7th Cir. 1988) ................................................................................... 11

*Cleveland Hair Clinic v. Puig*,
  200 F.3d 1063 (7th Cir. 2000) ................................................................................. 12

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ............................................................................. 10, 11

*In re Thomas*,
  223 F. App'x 310 (5th Cir. 2007) .............................................................................. 6

*Jorgenson v. Volusia Cnty.*,
  846 F.2d 1350 (11th Cir. 1988) ............................................................................... 11

*Media Matters for Am. v. Paxton*,
  2024 WL 1773197 (D.D.C. Apr. 12, 2024) ............................................................. 11

*Moody v. Arc of Howard*,
  474 F. App'x 947 (4th Cir. 2012) ............................................................................ 12

*Mother & Unborn Baby Care of North Texas v. State*,
  749 S.W.2d 533 (Tex. App.—Fort Worth 1988, writ. denied) .................................. 3

*Reps. Comm. For Freedom of Press v. AT&T*,
  593 F.2d 1030 (D.C. Cir. 1978) ............................................................................... 11

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) .................................................................................. 10

*United States v. Robinson*,
  318 F. App'x 280 (5th Cir. 2009) .............................................................................. 9

*United States v. Shaffer Equip. Co.*,
  11 F.3d 450 (4th Cir. 1993) ............................................................................................... 6

*Valdez v. Allstate Fire & Cas. Ins. Co.*,
  2021 WL 4340973 (W.D. Tex. Sept. 22, 2021) ............................................................... 9

**Statutes**

Tex. Bus. & Com. Code § 17.61 (a) .................................................................................... 3

Tex. Bus. & Com. Code 17.61(g) ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 11 .......................................................................................................... 1, 6, 12

Fed. R. Civ. P. 11(c)(4) ....................................................................................................... 12

## I. INTRODUCTION

The Court should enter sanctions against Las Americas for its unnecessary complaint and eleventh-hour emergency motion to halt a legitimate and well-grounded DTPA investigation by the Office of the Attorney General (OAG).

Sanctions are warranted for two reasons: First, both filings were based on substantial and material factual misrepresentations about the impact of the CID on Las Americas' activities. As it turns out, there was no need for emergency judicial intervention at all: Las Americas could have simply replied "none" and produced a privilege log – just as the CID allowed – and just as Las Americas eventually did. And second, Las Americas failed to inform this Court of binding Fifth Circuit precedent that categorically forecloses the type of lawsuit that it brought here.

Each of these are independent grounds for sanctions under Fed. R. Civ. P. 11. The presence of both necessitates punishment for Las Americas' abuse of the judicial process and to deter similar abusive conduct in the future.

## II. BACKGROUND

### A. Reports of Fraud in the CHNV Program.

In October 2022, the Department of Homeland Security (DHS) announced a program allowing Venezuelan nationals to apply for immigration parole and be released into the United States.[1] Just a few months later, DHS expanded the program to include Cubans, Haitians, and Nicaraguans.[2] The program became known as the "CHNV" Advance Travel Authorization program.

---

[1] DHS Press Release Regarding New Migration Enforcement Process for Venezuelans, Oct. 12, 2022 (available at https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans), last visited Oct. 2, 2024.

[2] DHS Press Release Regarding New Parole Processes for Cubans, Haitians, and Nicaraguans, Jan. 5, 2023 (available at https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and), last visited Oct. 2, 2024.

The CHNV program pairs "sponsors" in the United States with CHNV nationals and allows advance travel authorization for up to 30,000 CHNV parolees per month. *Id*. Under the program, sponsors must agree to financially support their respective CHNV parolees. *Id*.

In July 2024, a non-profit immigration organization reported that a U.S. Citizenship and Immigration Services (USCIS) internal investigation (the "Report") "suggest[ed] massive fraud in the application process, and specifically, fraudulent information used in thousands of Forms I-134A" – the paperwork submitted by CHNV sponsors.[3]

Among other *indicia* of fraud, the internal investigation showed that: (1) a mere 100 IP addresses submitted 51,133 sponsor applications, (2) 3,218 serial sponsors accounted for 100,948 applications, (3) the same 100 physical addresses were associated with 19,062 forms, (4) the same phone numbers and email addresses appeared for thousands of parolees, and (5) the same answer patterns and long-form answers existed in thousands of applications. *Id*. Shortly after this Report, the federal government temporarily suspended the CHNV program "due to concerns about fraud among sponsors."[4]

B.   **Las Americas' Involvement in the CHNV Program.**

Las Americas has long touted that its "work includes direct representation of noncitizens in *every stage* of the federal removal system." *Complaint in Las Americas v. McCraw, Cause No. 1:23-cv-1537* (Ex. 3), ¶ 9 (emphasis added). It "provides immigration counseling and representation to immigrants seeking work authorization, asylum, family reunification, residency, and citizenship, and to those detained by the U.S. government." Verified Complaint (ECF No. 1),

---

[3] *Internal Homeland Security Report Proves Biden-Harris-Mayorkas CHNV Parole Program Loaded with Fraud*, Federation for American Immigration Reform, Aug. 6, 2024 (available at www.fairus.org/news/executive/internal-homeland-security-report-proves-biden-harris-mayorkas-chnv-parole-program), last visited Oct. 2, 2024.

[4] Camilo Montoya-Galvez, U.S. Pauses Migrant Sponsorship Program Due to Fraud Concerns, CBS News, Aug. 2, 2023 (available at https://www.cbsnews.com/news/us-migrant-sponsorship-program-paused-cuba-haiti-nicaragua-venezuela/), last visited Oct. 2, 2024.

2

¶ 10. And it routinely deals with the federal government's "ever-changing immigration policies." *Id.* at ¶ 6. Particularly relevant here, Las Americas provides "Know Your Rights presentations focusing on equipping individuals with an understanding of their options for entering the United States." *Id.* ¶ 16. And it performs "community outreach workshops" where it educates "people who may themselves be citizens or present legally in the United States, but who have undocumented family, friends, and neighbors." *Id.* ¶ 15. So, it stands to reason that Las Americas distributes substantial information related to the CHNV program.

### C. OAG's Issuance of an Administrative Subpoena to Las Americas.

The Texas Deceptive Trade Practices Act (DTPA) prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *Id* § 17.46(a). The DTPA's scope is broad, and the Attorney General enforces it against a broad range of service providers. *See, e.g.*, *Mother & Unborn Baby Care of North Texas v. State*, 749 S.W.2d 533, 536 (Tex. App.—Fort Worth 1988, writ. denied) (enforcing against pro-life facility for luring patients into believing that facility "was an abortion clinic"). And it has long been enforced against organizations who prepare "form[s] submitted by or on behalf of individuals seeking immigration benefits." *See Avila v. State*, 252 S.W.3d 632, 635 (Tex. App.—Tyler 2008); *contra* Verified Complaint (ECF No. 1), ¶ 42 ("Upon information and belief, Las Americas is the first immigration legal services nonprofit to receive an investigative demand under the DTPA.").

Under the DTPA, the Attorney General may issue a form of administrative subpoena – a Civil Investigative Demand (CID) – if he "believes that any person may be in possession, custody, or control" of "material relevant to the subject matter of an investigation of a possible violation of this subchapter." Tex. Bus. & Com. Code § 17.61 (a). CIDs can be directed to both the target of an investigation and third-parties. *See id.*

3

Shortly after becoming aware of the USCIS Report – and after confirming that multiple reference points of suspicious, and likely fraudulent, activities referenced therein, intersected with Texas – the Attorney General issued CIDs to several Texas entities.[5]

Las Americas was a recipient of one of those CIDs. On August 30th, Defendant sent Las Americas a narrow CID seeking the following categories of documents by September 27th:[6]

1. Communications with the federal government regarding the CHNV program.

2. [I]nformational documents, forms, and instructions" that Las Americas provides to CHNV applicants.

3. "[I]nformational documents, forms, and instructions" Las Americas provides to potential or actual CHNV applicant sponsors.

4. Information that would show the identity of the preparer of CHNV applications in instances where the person who prepares the document is *not* the applicant himself.

*Civil Investigative Demand* (Ex. 4), p. 6.

Following receipt of the CID, Las Americas made no attempts to confer Defendant prior to filing this lawsuit. Indeed it did not inquire into the scope of the CID, did not seek an extension of time to respond, never inquired as to its options for compliance, and never negotiated whether the CID could be narrowed. *Aff. of Rob Farquharson* (Ex. 5), ¶¶ 3-6; *Aff. of Ryan Hanlan* (Ex. 6), ¶¶ 3-4.

### D. Las Americas' Eleventh-Hour Attempt to Halt OAG's Investigation.

Rather than attempt to resolve any issues or complaints with OAG (as is typical), on the evening of September 25th, Las Americas filed a Verified Complaint and Emergency Motion for TRO and Preliminary Injunction. In those pleadings, Las Americas made a number of elaborate allegations, including that "staff have **stopped providing** certain legal, accurate information" to

---

[5] Plaintiff, Las Americas, is the only CID recipient that sought judicial relief. All other CID recipients responded to materially similar requests without incident.
[6] The following category descriptions are paraphrased for ease of readability.

potential clients "*[a]s a direct result*" of the subpoena. Verified Complaint (ECF No. 1), ¶ 50 (emphasis added). Similarly, Las Americas also complained that compliance with the administrative subpoena would force it to "narrow [its] client base" and "*directly threaten its organizational health*." *Id.* ¶¶ 48, 67 (emphasis added).

      E.      **Las Americas' Response to the CID.**

On September 27th, this Court denied Las Americas' Emergency TRO and Preliminary Injunction. Order Denying Temporary Restraining Order (Order) (ECF No. 7). In doing so, the Court noted that Las Americas' "failure to file its Motion more promptly . . . made it impossible for the Court to conduct the cautious and difficult analysis necessary to assess whether Plaintiff satisfies the strict legal requirements for a TRO—despite the Court's diligent efforts over the past 28 hours." Order (ECF No. 7) at 10.

Within hours after the Court's Order, Las Americas submitted a "full and complete response" to the CID. *Las Americas Letter to OAG dated September 27, 2024* (Ex. 1). That response contained 3 pages total: A two-page letter claiming that Las Americas "is not in possession of *any* information responsive to items 2, 3, and 4 of your CID." *Id.* at 1 (emphasis added). And, in response to CID request no. 1, a one-page privilege log identifying 11 documents that Las Americas shared with the U.S. government and claimed were confidential. *Id.*; Ex. 2.

In other words, when it didn't get the emergency relief that it wanted, Las Americas made an immediate about-face. It stopped complaining about the supposed substantial interference that the CID caused, and instead, took a polar-opposite position – claiming that it, in fact, has *no* informational documents that it provides to persons seeking to use the fraud-ridden program and "does not regularly engage" with persons seeking to use the program. *Id*.

As set forth below, this CID response is incompatible with multiple material representations that Las Americas made in its effort to spur emergency action from this Court.

### III. ARGUMENT

"Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the [judicial] process." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993). And courts routinely sanction parties who "sign[] documents containing intentional misrepresentations in an attempt to abuse the [litigation] process." *In re Thomas*, 223 F. App'x 310, 315 (5th Cir. 2007). This Court should order sanctions pursuant to Rule 11 for Las Americas' multiple factual misrepresentations to the Court and its glaring omission of binding Fifth Circuit precedent that is fatal to its claim for emergency relief. Fed. R. Civ. P. 11.

### A. The Court Should Sanction Las Americas for its Misrepresentations.

As explained below, Las Americas made multiple false statements related to the impact on its operations, its press appearances, and its organizational health that materially misrepresented the need for emergency intervention.

#### i. Las Americas Misrepresented the Effect of the CID on its Operations.

Las Americas made multiple representations in its Verified Complaint about how the CID affected its operations. But Las Americas' CID response indicates that those representations were false.

As noted *supra*, CID requests Nos. 2 and 3 sought documents that Las Americas provides to CHNV applicants and sponsors. Las Americas' statements suggest that it possesses such documents. It provides "Know Your Rights presentations focusing on equipping individuals with an understanding of their options for entering the United States." *Id.* ¶ 16. And it performs "community outreach workshops" where it screens people and educates "people who may themselves be citizens or present legally in the United States, but who have undocumented family, friends, and neighbors." *Id.* ¶ 15. It stands to reason that in these workshops and presentations, Las Americas disseminates and presents documents to persons who may pursue the CHNV program.

6

Las Americas' Verified Complaint also made multiple representations that the CID forced it to *change* those presentations and workshops—ostensibly to remove any mention of the CHNV program. Specifically, Las Americas told this Court that, "*[a]s a direct result*" of the subpoena, its "staff have stopped providing certain legal, accurate information" to potential clients. Verified Complaint (ECF No. 1), ¶ 50. Las Americas said that after receiving the subpoena, the organization "altered the format" of its presentations. *Id.* And Las Americas said that if "forced to respond to the" subpoena, it would have to "alter [its] organization and narrow [its] client base." *Id.* ¶ 67.

But these claims cannot be squared with Las Americas' September 27th CID response. Namely, Las Americas now says it has *no* "information responsive to items 2, 3, and 4 of [the] CID." *Las Americas Letter to OAG dated September 27, 2024* (Ex. 1), p. 1. In other words, Las Americas has no documents that it presents or distributes regarding the CHNV program. But if that is true, then why did Las Americas tell this Court it "stopped" performing services "[a]s a direct result" of the subpoena? Verified Complaint (ECF No. 1), ¶ 50. And why did it tell the Court that the CID coerced it to "alter[] the format" of its presentations? *Id.* Las Americas also says that it "does not regularly engage with a population of people eligible for, or interested in becoming a sponsor for an eligible immigrant under the CHNV parole program." *Las Americas Letter to OAG dated September 27, 2024* (Ex. 1), p.1. But if that is true, then why did Las Americas tell this Court it would have to "alter [its] organization and narrow [its] client base" if "forced to respond to the" subpoena? Verified Complaint (ECF No. 1), ¶ 67.

There may be a way to reconcile these statements, but much like the unexplained "emergency" nature of its Emergency Motion for TRO and Preliminary Injunction, it is unclear how.

7

      **ii.    The Court should Sanction Las Americas for its Misrepresentations about the CID's Effect on its Press Appearances.**

Las Americas claimed that the CID forced it to cease making media appearances, but the public record shows that is false. Specifically, Las Americas' Verified Complaint claimed that it "previously would engage in . . . interview requests" pertaining to "immigration legal news" but "because of the CID, no longer does so." *Id.* ¶ 57. But the public record shows that this is false. Within hours of filing its Verified Complaint, Las Americas gave what appeared to be a pre-planned media interview regarding the lawsuit[7] and initiated a social media blitz.[8] Of course, Las Americas has a right to talk to the press about whatever it wants. But it does not have a right to mislead this Court in seeking emergency relief.

      **iii.    The Court Should Sanction Las Americas for its Misrepresentation that Compliance with the CID was so Burdensome that it would Compromise Organizational Health.**

Las Americas represented that compliance with the CID would be exceptionally burdensome and would "directly threaten its organizational health" by diverting its "limited resources away from its mission and services." Verified Complaint (ECF No. 1), ¶ 48. But its CID response reveals that this was a misrepresentation designed to obtain judicial relief. In fact, it was able respond to the CID with great ease.

Las Americas' Motion said that it has a "small team and limited resources" and so "receiving and responding to the CID in less than a month from receipt presented a burden for Las Americas." Emergency Motion for TRO and Preliminary Injunction (ECF No. 4-2), p. 15. That statement is irreconcilable with Las Americas' CID response. Las Americas produced a two-page

---

[7] *See* Las Americas files suit against AG Paxton (youtube.com), KTSM 9 News (available at https://www.youtube.com/watch?v=o3hNtcH9y1o) (beginning at minute 1:29).

[8] As just one example, in the time sense this lawsuit was filed, Las Americas has "tweeted"/"re-tweeted" about this lawsuit 18 times. Las Americas Immigrant Advocacy Center (@LasAmericasIAC), X (formerly, Twitter), last visited Oct. 3, 2024.

letter that mostly just re-printed what the CID asked for and asserted that Las Americas is "not in possession of any information responsive" to three out of four CID requests. *Las Americas Letter to OAG dated September 27, 2024* (Ex. 1). Then, Las Americas appended a privilege log that appears to identify just *two email chains* (one in January 2023, and another in March 2023) responsive to the remaining CID item. *See* Ex. 2. What is more, as noted *supra*, Las Americas did not need the Court's permission to reply to the CID with a privilege log; the CID already expressly allowed for that.

It is hard to understand how Las Americas could contend that this three-page production was a "burden" on its "small team and limited resources" warranting emergency relief from this Court. Indeed, its Verified Complaint was *33* pages, and its Emergency Motion for TRO and Preliminary Injunction was *32* pages. Necessarily, the burden involved in assembling these apparently unnecessary documents was a far greater burden than simply replying "none" and producing a privilege log – which it eventually did.

Instead, Las Americas pressed a substantial and immediate burden on this Court.[9] Indeed, the Court was forced to expend "diligent efforts over [a period of] 28 hours" to maintain fairness in an *ex parte* setting and "conduct the cautious and difficult analysis necessary to assess whether" Las Americas was entitled to emergency relief – relief that it now appears was unnecessary to begin with. Order at 10.

### B. The Court Should Sanction Las Americas for Failing to Disclose that Binding Precedent Foreclosed its Suit.

"[F]ailing to cite controlling precedent" is also a basis for sanctions. *United States v. Robinson*, 318 F. App'x 280, 284 n.3 (5th Cir. 2009); *Valdez v. Allstate Fire & Cas. Ins. Co.*, 2021

---

[9] Las Americas has yet to provide an explanation for the delay between its receipt of the CID on September 4, 2024 and its emergency filing on September 25, 2024.

9

WL 4340973, at *4 (W.D. Tex. Sept. 22, 2021) (parties have "a duty of candor to the Court to cite controlling adverse authority"). But Las Americas failed to inform this Court of binding, indistinguishable precedent that foreclosed its suit.

It is well-established that federal courts "strongly disfavor[] any pre-enforcement review of investigative subpoenas." *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334 (10th Cir. 1984). In most circuits, there is a categorical rule against pre-enforcement review of a non-self-executing subpoena – a subpoena that does not impose automatic consequences for failure to comply but, rather, requires the government to petition a court for an order enforcing the subpoena if a recipient does not comply. And, in *Google, Inc. v. Hood*, the Fifth Circuit applied this rule in a substantially similar setting. Namely, the Fifth Circuit held that this type of "administrative subpoena is not ripe for review" because no consequences fall on the recipient for failure to comply unless and until the government moves in State court for an enforcement order. 822 F.3d 212, 226 (5th Cir. 2016). "[T]here is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated in state court" in a defensive posture. *Id.*

A CID issued under the DTPA is non-self-executing. In other words, no consequence falls on the recipient unless and until the Attorney General obtains an enforcement order from a State court. Tex. Bus. & Com. Code 17.61(g). As the Ninth Circuit put it in a substantially similar context:

> If OAG seeks to enforce the CID, it must serve the recipient with the petition, the state court can conduct hearings to determine whether to order enforcement, and the recipient may appeal to the Texas Supreme Court. So to complain about the CID in this posture is to speculate about injuries that have not and may never occur.

*Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1176 (9th Cir. 2022)

Las Americas' First Amendment claims do not change the analysis. *Hood* explained that "invocation of the First Amendment cannot substitute for the presence of an imminent, non-

10

speculative irreparable injury." *Hood*, 822 F.3d at 228. After all, [t]here is no person in the United States" who cannot allege some "First Amendment right" that an "investigative technique" has supposedly trampled on, and then seek an injunction against the investigation on that basis. *Reps. Comm. For Freedom of Press v. AT&T*, 593 F.2d 1030, 1070 (D.C. Cir. 1978). (Wilkey, J.). That "approach has no logical stopping-point" and, if ever entertained, would mire the federal courts in a flood of litigation to short-circuit investigations. *Id.*[10]

Of course, Las Americas was entitled to argue that something unique about this case warranted a carveout from *Google v. Hood* (it does not), but it was not permitted to sweep that case under the rug entirely. And even if Las Americas *could* distinguish *Google v. Hood*, its "ability to distinguish the omitted cases when pressed to do so should not excuse its lack of candor in its pleadings." *Barth v. District of Columbia*, 1993 WL 523999, at *4 (D.C. Cir. Dec. 14, 1993) (Henderson, J., concurring); *see also Jorgenson v. Volusia Cnty.*, 846 F.2d 1350, 1352 (11th Cir. 1988). Las Americas was not permitted to use the "ostrich-like tactic of pretending that potentially dispositive authority against [its] contention does not exist[]." *Borowski v. DePuy, Inc.,* 850 F.2d 297, 304-05 (7th Cir. 1988). And that is "particularly" true "where, as here," Las Americas sought a "temporary restraining order" and Defendant had no reasonable opportunity to respond first. *Jorgenson*, 846 F.2d at 1352.

---

[10] The Attorney General is aware of a single out-of-circuit case that reached a different outcome about reviewability. *Media Matters for Am. v. Paxton*, 2024 WL 1773197 (D.D.C. Apr. 12, 2024). The *Media Matters* court addressed *Google* in only a single paragraph, and opted not to follow it because it did not involve "self-censorship and other chilling effects experienced by a media organization and journalist." *Id.* at *17. By contrast, the *Media Matters* plaintiffs were a "investigative reporter" and a "media landscape" monitor. *Id.* at *1-2. It is not apparent why the *Media Matters* court thought these distinctions made a difference. And, for good measure, Las Americas does not purport to be an investigative reporter or a media landscape monitor, so these distinctions do it no good.

11

### C. Sanctions Should Include an Order that Las Americas Pay a Penalty for its Failed Candor.

This Court's sanction order should require that Las Americas "pay a penalty into court." Fed. R. Civ. P. 11(c)(4).

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Ct.*, 474 F. App'x 947, 950 (4th Cir. 2012). Frequently, this sanction takes the form of an order to pay the opposing party's costs. But, because the Court acted before the Attorney General responded to Las Americas' motion, such a sanction would be inapposite. Many other sanctions, however, are available. *Accord Cleveland Hair Clinic v. Puig*, 200 F.3d 1063, 1067-68 (7th Cir. 2000) ("[V]iolations of th[e] duty [of candor] can lead to sanctions even more severe than payment of opponent's fees and costs."). Here, an appropriate sanction to deter future conduct and address the harm Las Americas inflicted on the Court would be for the Court to order Las Americas to pay a penalty into court.

### IV. CONCLUSION

Las America's response to the CID establishes that it made multiple false statements to the Court that materially misrepresented the need for emergency intervention. The CID response cannot be squared with the aggressive representations it made in an attempt to obtain emergency relief from this Court. Moreover, the response to the CID calls into serious question why it opted to burden this Court with an 11th hour emergency motion at all. Plainly, if Las Americas does not even possess responsive documents, there was no emergency. And the CID expressly allowed a privilege log; Las Americas didn't need the Court's intervention to allow one.

Additionally, Las Americas failed to apprise this Court of binding precedent that expressly forecloses the type of lawsuit that it brought here.

In order to punish these misrepresentations and deter future ones, the Court should order Las Americas "to pay a penalty into court." Fed. R. Civ. P. 11(c)(4).

12

Dated:  NOVEMBER 4, 2024	Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection Division


/s/ *Rob Farquharson*
ROB FARQUHARSON
Assistant Attorney General
State Bar No. 24100550
Office of the Attorney General of Texas
Consumer Protection Division
300 W. 15th St.
Austin, Texas 78701
Phone: (214) 290-8811
Fax: (214) 969-7615
Rob.Farquharson@oag.texas.gov


*Attorneys for Defendant W. Kenneth Paxton, in his official capacity as Attorney General of Texas*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of October, 2024, a copy of the foregoing document was served via electronic mail to all counsel of record at least twenty-one (21) days before it was e-filed or presented to the Court on the 4th day of November, 2024.

*/s/ Rob Farquharson*
ROB FARQUHARSON
Assistant Attorney General