**UNITED STATES DISTRICT COURT**
**THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **LAS AMERICAS IMMIGRANT ADVOCACY CENTER,** | § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | **Case No.: EP-24-CV-00352-DCG** |
| **KEN PAXTON,** *in his official capacity as Attorney General of Texas*, | § § § | |
| *Defendant.* | § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS (ECF NO. 21)**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF THE CASE ...............................................................................2

III.  LEGAL STANDARD .............................................................................................4

IV.   ARGUMENT ..........................................................................................................4

    A.    Las Americas Has Article III Standing to Bring this Action. ...................5

        1.    Las Americas' Self-Censorship Is an Article III Injury...............................5

        2.    Las Americas' First Amendment Injury Is Traceable to Defendant and Redressable by the Court. ...................................................................10

    B.    Las Americas' Claims Are Ripe for Review. ............................................11

        1.    Las Americas' Claims are Fit for Judicial Decision. ...................................11

        2.    The Hardships Favor Resolving the Case. ....................................................16

    C.    Las Americas' Case Remains Live and Justiciable Because Defendant Can Move to Enforce the CID or Expand Its Scope.......................................17

V.    CONCLUSION .....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
    387 U.S. 136 (1967)................................................................................................11

*Adarand Constructors, Inc. v. Slater*,
    528 U.S. 216 (2000)................................................................................................18

*Annunciation House Inc. v. Ken Paxton*,
    No. 2024DCV0616 (205th Dist. Ct., July 2, 2024) ....................................................8

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979)........................................................................................5, 10, 13

*Baldridge v. United States*,
    406 F.2d 526 (5th Cir. 1969).................................................................................17, 18

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*,
    70 F.4th. 914 (5th Cir. 2023).............................................................................*passim*

*BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*,
    17 F.4th 604 (5th Cir. 2021).....................................................................................17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................9, 10, 15, 16

*Connell v. Shoemaker*,
    555 F.2d 483 (5th Cir. 1977).....................................................................................19

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006)................................................................................5, 10

*Di Angelo Publ'ns, Inc. v. Kelley*,
    9 F.4th 256 (5th Cir. 2021).........................................................................................4

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965).....................................................................................................6

*Elrod v. Burns*,
    427 U.S. 347 (1976)...................................................................................................11

*F.T.C. v. Gibson Prods. of San Antonio, Inc.*,
    569 F.2d 900 (5th Cir. 1978).....................................................................................17

*Fed. Bureau of Investigation v. Fikre,*
    601 U.S. 234 (2024) ....................................................................................18

*Felder v. Casey,*
    487 U.S. 131 (1988) ............................................................................... 12, 13

*Frye v. Anadarko Petroleum Corp.,*
    953 F.3d 285 (5th Cir. 2019) ....................................................................19

*Gilbert v. Donahoe,*
    751 F.3d 303 (5th Cir. 2014) ......................................................................4

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ................................................................ 13, 14

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ...................................................................................12

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) .......................................................................................10

*Williams ex rel. J.E. v. Reeves,*
    954 F.3d 729 (5th Cir. 2020) ......................................................................4

*Justice v. Hosemann,*
    771 F.3d 285 (5th Cir. 2014) ......................................................................5

*Knick v. Township of Scott, Pennsylvania,*
    588 U.S. 180 (2019) ..........................................................................11, 12, 13

*Laird v. Tatum,*
    408 U.S. 1 (1972) ................................................................................. 15, 16

*Larson v. Valente,*
    456 U.S. 228 (1982) ............................................................................... 10, 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .....................................................................................5

*Maryland Cas. Co. v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941) ...................................................................................19

*McClain v. Panama Canal Comm'n,*
    834 F.2d 452 (5th Cir. 1987) ......................................................................4

*Media Matters for America v. Paxton,*
    – F. Supp. 3d –, No. 24-cv-147, 2024 WL 1773197 (D.D.C. Apr. 12, 2024)
    *appeal filed,* 24-7059 (D.C. Cir.) ...........................................................14

*In Re Office of the Att'y Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley*
(Tex. App.—Corpus Christi Aug. 23, 2024) ................................................8

*In Re Office of the Texas Att'y Gen. of the State of Tex.*
(Tex. App.—Austin [15th Dist.] Oct. 3, 2024) .................................................8

*Office of Thrift Supervision Department of Treasury v. Dobbs,*
931 F.2d 956 (D.C. Cir. 1991) ...........................................................18

*Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.,*
477 U.S. 619 (1986) .......................................................................6

*Ondrusek v. U.S. Army Corps. of Eng'rs, et al.,*
No. 23-10892, 2024 WL 5102221 (5th Cir. Dec. 13, 2024) ...........................13, 16

*Opulent Life Church v. City of Holly Springs, Miss.,*
697 F.3d 279 (5th Cir. 2012) ............................................................11

*Pakdel v. City & County of San Francisco, Cal.,*
594 U.S. 474 (2021) ......................................................................12

*Patsy v. Bd. of Regents of State of Fla.,*
457 U.S. 496 (1982) ......................................................................12

*Reporters Committee for Freedom of Press v. AT&T,*
593 F.2d 1030 (D.C. Cir. 1978) .....................................................15, 16

*Saline Parents v. Garland,*
88 F.4th 298 (D.C. Cir. 2023) ......................................................15, 16

*Seals v. McBee,*
898 F.3d 587 (5th Cir. 2018) ...........................................................8, 9

*Speech First, Inc. v. Fenves,*
979 F.3d 319 (5th Cir. 2020) .......................................................*passim*

*Sprint Commc'ns, Inc. v. Jacobs,*
571 U.S. 69 (2013) ........................................................................4

*Stanley v. Morgan,*
120 F.4th 467 (5th Cir. 2024) ...........................................................12

*Steffel v. Thompson,*
415 U.S. 452 (1974) ......................................................................19

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .......................................................................6

*Telescope Media Grp. v. Lucero*,
    936 F.3d 740 (8th Cir. 2019)............................................................................7

*Thomas v. Union Carbide Agric. Prod. Co.*,
    473 U.S. 568 (1985)......................................................................................11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)........................................................................................5

*Twitter v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022)......................................................................14

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009)......................................................................19

*Wolcott, M.D., P.A. v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011)........................................................................4

*Zwickler v. Koota*,
    389 U.S. 241 (1967)......................................................................................19

**Statutes**

42 U.S.C. § 1983..............................................................................12, 13, 15

Declaratory Judgment Act....................................................................................19

Tex. Comm. Code § 17.46(a)-(b)......................................................................16

Tex. Comm. Code § 17.62....................................................................................16

Texas Business Organizations Code......................................................................8

Texas Deceptive Trade Practices Act..................................................2, 14, 16, 17

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................4

Sandra Sanchez, *Judge rules in favor of Catholic Charities RGV in State of Texas'
    investigation*, 6 News (July 24, 2024, 5:21 PM EDT),
    https://www.wate.com/border-report-tour/judge-rules-in-favor-of-catholic-
    charities-rgv-in-state-of-texas-investigation/.........................................................1

Tex. R. Civ. P. 202................................................................................................8

U.S. Const. amend. I........................................................................................*passim*

U.S. Const. amend. V ...................................................................................................................12

U.S. Const. art. III..............................................................................................................*passim*

## I.    INTRODUCTION

Over the last year, Defendant has used the power of his elected office to strike at Texas immigration nonprofits for exercising their First Amendment rights to advocate for and to serve the most vulnerable individuals at our borders. Defendant has publicly vowed to investigate immigration nonprofits. These vows stem not from any wrongdoing on the nonprofits' parts, but from a well of antipathy against immigrants and Defendant's hostility towards the nonprofits' humanitarian missions. He has recklessly branded critical nonprofit services, such as providing shelter to homeless migrants, as criminal human trafficking.[1] Defendant's baseless legal and administrative actions brought against these nonprofits serve no other purpose than political fodder for his intimidation campaign.

Las Americas, one of the few nonprofit organizations providing direct legal services to immigrants in the El Paso region, has now drawn Defendant's wrath. Las Americas openly serves immigrants in need and provides accurate information to its clients—work its partner organizations have been similarly investigated for. As part of his campaign, Defendant initiated this baseless investigation that infringes on Las Americas' First Amendment rights. In response, Las Americas filed this suit to protect its right to advocate on behalf of immigrants coming to the United States.

Defendant argues the Court lacks jurisdiction to provide relief to Las Americas—characterizing its injuries as nothing more than "self-inflicted" wounds. The facts tell a different story. Defendant fails to acknowledge the full context of Las Americas' injuries, as set out in its First Amendment Complaint ("FAC"). The FAC is clear: Las Americas' "wounds" are a direct consequence of Defendant's actions, which include the issuance of the civil investigative demand

---

[1] Sandra Sanchez, *Judge rules in favor of Catholic Charities RGV in State of Texas' investigation*, 6 News (July 24, 2024, 5:21 PM EDT), https://www.wate.com/border-report-tour/judge-rules-in-favor-of-catholic-charities-rgv-in-state-of-texas-investigation/.

("CID"). Moreover, Defendant ignores binding legal precedent that establishes Las Americas' claims as ripe for review. Crucial First Amendment liberties are at stake, and to allow Defendant to continue intimidating organizations like Las Americas sets a dangerous precedent.

Accordingly, the Court has jurisdiction over this case and should deny Defendant's Motion to Dismiss ("MTD").

## II.    STATEMENT OF THE CASE

For the last year, Defendant has weaponized his authority as Attorney General to attack immigrant service organizations similar to Las Americas for providing assistance to vulnerable populations. Defendant has attempted to shut down nonprofits through dissolving their charters,[2] sent his agents to the door of Annunciation House demanding immediate compliance with voluminous record requests—a tactic a state judge labeled as harassment,[3] and continued his aggressive tactics with a rash of additional baseless actions against groups aligned with immigrants' rights.[4] Las Americas has become Defendant's latest target.

On September 4, 2024, Defendant served a Civil Investigative Demand ("CID") on Las Americas under the Texas Deceptive Trade Practices Act ("DTPA").[5] The CID stated that Defendant was investigating possible violations of the DTPA, "including fraudulent and deceptive legal representations and services."[6] It also requested that Las Americas produce documents, including documents containing confidential client information, related to the parole program for Cuban, Haitian, Nicaraguan, and Venezuelan immigrants ("CHNV").[7]

---

[2] ECF No. 16 ¶ 26.
[3] *Id.* ¶¶ 27–30.
[4] *Id.* ¶¶ 32–38.
[5] *Id.* ¶¶ 2, 6.
[6] *Id.* ¶ 40.
[7] *Id.* ¶ 43.

Upon receiving the CID, and in light of the aggressive targeting of other nonprofits, Las Americas was forced to reevaluate and reconsider how it interacts with clients and partners.[8] Indeed, Las Americas now limits the manner in which staff answer open-ended questions during Know Your Rights presentations and completely censors certain topics, including the CHNV program, during public and private consultations.[9] Because Defendant has demanded confidential client information, and there is no way to determine whether Defendant will cease targeting Las Americas, it has been forced to advise clients and potential clients of the risk that it cannot keep client information private.[10] In fear of Defendant's further retaliation, Las Americas has also censored the extent to which it engages with media on critical topics essential to its humanitarian mission and its associations with clients and the public.[11] Further, Defendant's investigation has caused Las Americas to divert resources it could have used to hire staff to carry out its mission, further curtailing its expression.[12] And because Las Americas is yet another target of Defendant's harassment campaign, Las Americas has also alerted partners to the existence of the CID, creating concern about the health of those relationships.[13]

After the Court's denial of its request for a temporary restraining order, Las Americas responded to the CID by notifying Defendant that the only documents it possessed were confidential communications made on behalf of Las Americas' clients. To date, Defendant has not moved to enforce the CID (using the lack of enforcement to create a false impression of lack of harm), but at any time, he could allege Las Americas' response is deficient and seek a court order

---

[8] *See* ECF No. 16 ¶¶ 47–74.
[9] *Id.* ¶¶ 49, 58–59, 62.
[10] *Id.* ¶¶ 50–52.
[11] *Id.* ¶ 56.
[12] *Id.* ¶¶ 70–72.
[13] *Id.* ¶ 57.

compelling Las Americas to release these confidential communications. With uncertainty about the ultimate scope of Defendant's investigation and lack of clarity over its lawfulness, Las Americas continues to censor its protected expression.

Since receiving the CID, Las Americas has continued to actively suffer from these injuries. Consequently, Las Americas has standing to maintain this action, its claims are ripe for review, and the case is not moot. The Court should deny Defendant's Motion to Dismiss.

### III.    LEGAL STANDARD

"[A] federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'"[14] Thus, the Court should grant Defendant's MTD under Rule 12(b)(1) "only if 'it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle plaintiff to relief.'"[15] While "the party asserting jurisdiction bears the burden of proof," courts should "avoid tackling the merits under the ruse of assessing jurisdiction."[16] "Instead, 'the court must accept as true all nonfrivolous allegations of the complaint.'"[17]

### IV.    ARGUMENT

Defendant moves to dismiss under both Rule 12(b)(1) and Rule 12(b)(6). He makes no argument, however, contesting Plaintiff's First Amendment claims on the merits. Instead, his Motion rests on whether the Court has jurisdiction, employing arguments that disregard the realities of this case. Despite his arguments, Las Americas has standing to bring this action, the claims remain ripe for consideration, and Las Americas' CID response did not moot the case.

---

[14] *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quotation omitted).
[15] *Di Angelo Publ'ns, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (quoting *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020) (quoting *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014)).
[16] *Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762–63 (5th Cir. 2011) (quotation omitted).
[17] *Id.* at 763 (quoting *McClain v. Panama Canal Comm'n*, 834 F.2d 452, 454 (5th Cir. 1987)).

**A.  Las Americas Has Article III Standing to Bring this Action.**

Las Americas has Article III standing, as its self-censorship constitutes an actual injury caused by Defendant's investigation and issuance of the CID, which this Court can redress. To establish Article III standing, a plaintiff must show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[18]

In the MTD, Defendant only claims Las Americas' injuries are "conjectural and speculative regarding hypothetical circumstances that may never occur."[19] But "[i]t is not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech."[20] That is because "standing rules are relaxed for First Amendment cases so that citizens whose speech might otherwise be chilled by fear of sanction can prospectively seek relief."[21] Las Americas has met its burden.

*1. Las Americas' Self-Censorship Is an Article III Injury.*

"[S]elf-censorship [that] arise[s] from a fear of prosecution that is not 'imaginary or wholly speculative'" constitutes a "sufficient injury to confer standing."[22]

Further, "[b]ecause of the sensitive nature of constitutionally protected expression, [the Supreme Court of the United States] ha[s] not required that" individuals "risk prosecution to test

---

[18] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).
[19] ECF No. 21 ¶ 33.
[20] *Speech First, Inc. v. Fenves*, 979 F.3d 319, 331 (5th Cir. 2020).
[21] *Justice v. Hosemann*, 771 F.3d 285, 294 (5th Cir. 2014).
[22] *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660–61 (5th Cir. 2006) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)); *see Speech First, Inc.*, 979 F.3d at 330 ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." (collecting cases)); *see, e.g.*, *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th. 914, 927–28 (5th Cir. 2023) (Plaintiffs "are entitled to receive clarification from this court before stifling their constitutional practices or otherwise exposing themselves to punishment or enforcement action").

their [First Amendment] rights."[23] Even in cases involving civil, rather than criminal, penalties, the Supreme Court has made clear: "[A]dministrative action, like arrest or prosecution, may give rise to harm sufficient to justify pre-enforcement review."[24] Here, Las Americas has demonstrated self-censorship caused by the credible threat of enforcement by Defendant.

As explained above, Las Americas has modified its interactions with its clients and partners; limited, or in some cases eliminated, discussions of certain immigration topics at Know Your Rights presentations; censored its media outreach on topics integral to the services it provides; and diverted resources to addressing Defendant's CID. This chilled expression sufficiently establishes an Article III injury.[25]

As to the credible threat of prosecution, Defendant argues Las Americas' self-censorship is "self-inflicted" and "based on a subjective fear of hypothetical circumstances that may never occur."[26] But Defendant's argument relies upon a distorted view of the facts and ignores the harmful effects of the frivolous investigation. Defendant's targeting of Las Americas precisely follows Defendant's pattern of aggressive actions against immigration service providers. Defendant's history of immigration nonprofit attacks has informed Las Americas' behavior and establishes the credible threat of Defendant's actions to Las Americas.

Additionally, Fifth Circuit precedent forecloses Defendant's argument concerning the effect of Las Americas' self-censorship. In *Braidwood Management*, the Fifth Circuit found the plaintiffs had demonstrated a credible threat of prosecution where the EEOC had previously

---

[23] *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965).

[24] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (citing *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 625–26 n.1 (1986)).

[25] *See, e.g.*, *Speech First, Inc.*, 979 F.3d at 330–31 ("Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement.") (citations omitted) (quotations omitted).

[26] ECF No. 21 ¶ 40.

initiated an action for civil penalties against a similarly situated religious organization that allegedly violated the EEOC's guidance regarding gender discrimination.[27] The EEOC argued one enforcement action did not establish "a history of enforcement," but the Fifth Circuit rejected that argument and held "one case . . . can be considered a history of enforcement, even if the facts would not be precisely the same as in an action against [the plaintiffs]."[28] In fact, "a 'public[] announce[ment]' to enforce a statute and one prior proceeding are sufficient for standing."[29]

Here, the credible threat of enforcement against Las Americas exceeds that discussed in *Braidwood*, as Defendant directly issued the CID to Las Americas. Defendant has targeted not just one similar organization, but at least four other immigration nonprofits with investigations—all before issuing the CID to Las Americas. Finally, like the EEOC in *Braidwood*, Defendant, with the support of Governor Abbott, has made public announcements regarding his intentions to investigate immigration nonprofits: "All NGOs who are complicit in Joe Biden's illegal immigration catastrophe . . . should consider themselves on notice."[30] And Defendant's past public statements are a prologue to his current and future harassment campaigns against nonprofit organizations assisting immigrants at the border.

*First*, in February 2024, Defendant initiated his campaign against Annunciation House as earlier described.[31] As a result, Annunciation House filed an action against Defendant, seeking to protect its constitutional rights.[32] The state District Court granted Annunciation House's Motion for Summary Judgment, stating that Defendant's "use of the request to examine documents from

---

[27] 70 F.4th at 926–27.

[28] *Id.* at 927.

[29] *Id.* at 914 (quoting *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749–50 (8th Cir. 2019)).

[30] ECF No. 16 ¶ 31.

[31] *Id.* ¶ 27.

[32] *Id.*

Annunciation House was a pretext to justify its harassment of Annunciation House employees and the persons seeking refuge."[33]

*Second*, in April 2024, Defendant demanded documents under the Texas Business Organizations Code from Catholic Charities of the Rio Grande Valley.[34] Catholic Charities attempted to comply and produced documents in response. Defendant, nevertheless, continued to target the organization and filed a Rule 202 motion seeking a pre-suit deposition under the Texas Rules of Civil Procedure.[35, 36]

*Third*, in May 2024, Defendant targeted Team Brownsville, Inc., another nonprofit organization serving immigrants.[37] Team Brownsville made efforts to comply with Defendant's initial request to examine documents under the Texas Business Organizations Code.[38] Despite those efforts, Defendant, similar to his tactics against Catholic Charities, filed a Rule 202 pre-suit deposition against Team Brownsville, Inc.[39, 40]

Importantly, Defendant has not disavowed further enforcement against Las Americas, adding to the credibility and concreteness of Las Americas' fears.[41] In *Seals*, for example, the

---

[33] Order Granting Plaintiff Annunciation House, Inc.'s Traditional and No-Evidence Motion for Final Summary Judgement at 2, *Annunciation House Inc. v. Ken Paxton*, No. 2024DCV0616 (205th Dist. Ct., July 2, 2024).

[34] *Id.* ¶ 33.

[35] *Id.*

[36] The court refused to grant Defendant's request for a pre-suit deposition. Defendant's Mandamus petition remains pending. Petition for Writ of Mandamus, *In Re Office of the Att'y Gen. of the State of Tex. v. Catholic Charities of the Rio Grande Valley* (Tex. App.—Corpus Christi Aug. 23, 2024) (No. 13-24-00419-CV).

[37] *Id.* ¶ 34.

[38] *Id*.

[39] *Id.*

[40] The court refused to grant Defendant's request for a pre-suit deposition. Defendant's Mandamus petition currently remains pending. Petition for Writ of Mandamus, *In Re Office of the Texas Att'y Gen. of the State of Tex.* (Tex. App.—Austin [15th Dist.] Oct. 3, 2024) (No. 15-24-00106-CV).

[41] *See Seals v. McBee*, 898 F.3d 587, 590 (5th Cir. 2018).

plaintiff sought an injunction barring the local district attorney from prosecuting him under a Louisiana statute criminalizing "the use of violence, force, or threats" with the "intent to influence [an] officer's conduct."[42] The state argued the plaintiff lacked standing because "the D.A. has not charged [plaintiff] and has **expressly disavowed bringing such charges**."[43] The Fifth Circuit disagreed, holding the plaintiff had Article III standing because the plaintiff was "legally subject to prosecution," and the challenged statute was "not a mere paper tiger but ha[d] a real history of enforcement."[44] The Plaintiff "plainly ha[d] a concrete stake in th[e] litigation because the DA [could] change his mind and prosecute him."[45]

Unlike the District Attorney in *Seals*, who expressly disavowed prosecution, Defendant has openly acknowledged the possibility of further enforcement action.[46] Defendant's refusal to disavow enforcement supports "finding a credible threat of prosecution."[47] And even if Defendant were now to contend he "disavows" any enforcement, the threat of prosecution still exists, as Las Americas could still be legally subject to the DTPA's enforcement mechanism.[48] Thus, Defendant's self-serving characterizations do not alter the equation.

Defendant relies on a single case, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), which does not apply.[49] In *Clapper*, the Court rejected plaintiffs' claimed injury because the alleged injury rested on "their highly speculative fear" based on actions neither directed at nor experienced by them. Unlike the *Clapper* plaintiffs, here the Attorney General directly targeted

---

[42] *Id.*
[43] *Id.* at 592 (emphasis added).
[44] *Id.*
[45] *Id.* at 593.
[46] ECF No. 21 ¶ 31 ("if and when, the Attorney General does seek enforcement").
[47] *Seals*, 898 F.3d at 592.
[48] *See id.*
[49] ECF No. 21 ¶ 34–40.

Las Americas with the CID alleging "provision of fraudulent and deceptive legal representations and services."[50] And Defendant retains the ability to enforce the CID against Las Americas.[51] Thus, *Clapper* is inapplicable.[52]

Because Las Americas has established chilled First Amendment activity and is the direct target of the CID, it need not wait to be prosecuted to challenge Defendant's actions: the CID and underlying investigation inflict a First Amendment injury.[53]

   2. *Las Americas' First Amendment Injury Is Traceable to Defendant and Redressable by the Court.*

Las Americas has established an injury in fact, so "[t]he causation and redressability prongs of the standing inquiry are easily satisfied here."[54] On causation, a direct line can be drawn from Defendant's actions to Las Americas' injury because he baselessly accused Las Americas, a nonprofit law firm, of providing fraudulent legal services.

The Court has the ability to redress Las Americas' First Amendment injury. To satisfy standing, a plaintiff "need not show that a favorable decision will relieve his *every* injury."[55] Instead, a favorable decision need only redress "a discrete injury" to the plaintiff.[56] A decision on behalf of Las Americas would prevent ongoing retaliation by Defendant and eliminate Defendant's coercive tactics causing Las Americas' self-censorship. This would permit Las Americas to once

---

[50] ECF No. 16 ¶¶ 49.
[51] ECF No. 21 ¶ 31.
[52] *See Speech First, Inc.,* 979 F.3d at 336 (distinguishing *Clapper* and noting plaintiffs in *Clapper* were not "the subject of the challenged policies").
[53] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) ("Plaintiffs face 'a credible threat of prosecution' and 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief'" (quoting *Babbitt*, 442 U.S. at 298) (internal quotations omitted)).
[54] *Ctr. for Individual Freedom*, 449 F.3d at 661 (5th Cir. 2006).
[55] *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (emphasis in original).
[56] *Id.*

again engage in its protected expression and associations while prohibiting Defendant from targeting Las Americas based on the content of its advocacy.

Accordingly, as Las Americas has met its burden with respect to all injury prongs, it has standing to continue this action.

**B. Las Americas' Claims Are Ripe for Review.**

To determine whether claims are ripe for review, "[a] court must evaluate two factors: 1) 'the fitness of the issues for judicial decision" and 2) 'the hardship to the parties of withholding court consideration.'"[57] Both factors favor Las Americas, and the Court should reject Defendant's arguments to the contrary.

*1.  Las Americas' Claims Are Fit for Judicial Decision.*

On the first factor, courts ask whether the claim is predicated on "contingent future events that may not occur as anticipated, or indeed may not occur at all."[58] In the present case, the predicate act warranting judicial review has occurred—Defendant served a retaliatory and harassing CID baselessly accusing Las Americas of providing fraudulent legal services. Importantly, Defendant does not contest the three independent First Amendment claims Las Americas has pleaded. And, as the Fifth Circuit has made clear, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[59] Las Americas should not be forced to endure further erosion of its First Amendment rights prior to bringing suit, and its claims are ripe for review.

The Supreme Court of the United States has also addressed this precise issue. In *Knick v. Township of Scott, Pennsylvania*, the Supreme Court considered and rejected an analogous

---

[57] *Id.* (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967)).
[58] *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580–81 (1985) (quotation omitted).
[59] *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

argument under the Fifth Amendment.[60] Prior to *Knick*, the Supreme Court had held that a property owner's claim for just compensation after a taking "was not 'ripe'" until the property owner "sought compensation 'through the procedures the State ha[d] provided for doing so.'"[61] In overruling this precedent, the Supreme Court found the state-court-first requirement created a "preclusion trap" whereby "the takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court."[62] The Court reasoned that this could not be the law because Section 1983 "guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials.'"[63] Thus, the state-court-first requirement violated "the settled rule [] that 'exhaustion of state remedies is not a prerequisite to an action under [42 U.S.C.] § 1983."[64]

Far from being an outlier, *Knick*'s central premise—that Section 1983 contains no exhaustion requirement stopping plaintiffs from vindicating their rights in federal courts—followed decades of precedent.[65] And since *Knick*, both the Supreme Court and the Fifth Circuit have rejected attempts by litigants to argue that the availability of a state-court process foreclosed Section 1983 claims in federal court.[66]

---

[60] 588 U.S. 180 (2019).
[61] *Id.* at 189 (quotation omitted).
[62] *Id.* at 184–85.
[63] *Id.* at 185 (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).
[64] *Id.*
[65] *See, e.g.*, *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 500–01 (1982) ("[T]his Court has stated categorically that exhaustion is not a prerequisite to an action under § 1983[.]"); *Felder v. Casey*, 487 U.S. 131, 147 (1988) ("Congress chose to provide injured persons [] immediate access to *federal* courts.") (emphasis in original).
[66] *See, e.g.*, *Pakdel v. City & County of San Francisco, Cal.*, 594 U.S. 474, 479–80 (2021) (rejecting Ninth Circuit's rule that a plaintiff cannot bring a Section 1983 claim until he "complied with [the] administrative process"); *Stanley v. Morgan*, 120 F.4th 467, 471 (5th Cir. 2024) ("It is a 'settled rule' that 'exhaustion of state remedies is not a prerequisite to an action under § 1983'" (quoting *Knick*, 588 U.S. at 185)).

By arguing the CID's non-self-executing nature prevents any challenge to it from satisfying the ripeness standard, Defendant tries to create his own version of the preclusion trap *Knick* rejected. Defendant argues Las Americas' claim is not ripe "until the Attorney General obtains an enforcement order from a state court,"[67] but at that point, Las Americas' federal claims would be precluded by the state court judgment.[68] *Knick* prohibits such a tactic.[69] Las Americas need not wait for Defendant to "file[] an enforcement action against it in state court,"[70] because doing so would graft a state-law exhaustion requirement onto Las Americas' Section 1983 claim.

Defendant's principal case on this point—*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016)—does not support Defendant's state-court-first view and is distinguishable. *Google* does not support Defendant's bright line rule that "pre-enforcement challenges to non-self-executing requests for documents are not ripe for review."[71] Courts evaluate ripeness "on a case-by-case basis," and it is black letter law that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief."[72]

In *Google*, the Fifth Circuit found Google's claims were not ripe where the subpoena sought "information on a broad variety of subject matters" with a "fuzzily defined range of enforcement actions," and Google had not demonstrated that its "First Amendment interests [were] either threatened or in fact being impaired at the time."[73] Here, by contrast, Defendant's

---

[67] ECF No. 21 ¶ 24.

[68] *See Knick*, 588 U.S. at 184–85.

[69] *Id.* at 185 ("[T]he guarantee of a federal forum rings hollow for takings plaintiffs, who are forced to litigate their claims in state court.").

[70] ECF No. 21 ¶ 23.

[71] ECF No. 21 ¶ 22.

[72] *Braidwood Mgmt., Inc.*, 70 F.4th at 931, 932 (quotation omitted); *see Ondrusek v. U.S. Army Corps. of Eng'rs, et al.*, No. 23-10892, 2024 WL 5102221, at *4 (5th Cir. Dec. 13, 2024) ("But this bar against speculation does not mean that the courts are closed to claims based on potential risks of injury.") (citing *Babbitt*, 442 U.S. at 298).

[73] *Google*, 822 F.3d at 227, 228 (quotation omitted).

investigation follows a year of targeted and harassing actions against similarly situated organizations, and the unrefuted record makes clear Las Americas has suffered and continues to suffer ongoing First Amendment injuries.[74] The constitutional injury and corresponding claims spring directly from the issuance of the CID, notice of the investigation for alleged fraudulent legal services, and Defendant's ability under the DTPA to enforce the CID or expand its subject matter.

In *Media Matters for America v. Paxton*, Defendant unsuccessfully asserted the same ripeness and lack-of-standing arguments.[75] The District Court, in a preliminary injunction decision, distinguished both *Google* and *Twitter v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), because "[t]he Fifth Circuit [in *Google*] did not have before it, as here, self-censorship and other chilling effects experienced by a media organization and journalist."[76] Similarly, Las Americas offered a sworn declaration attesting to the statements regarding self-censorship and chilled expression, which constitute a ripe Article III injury.[77] Indeed, self-censorship represents the type of quintessential injury courts routinely find sufficient to establish an active Article III controversy.[78]

The Fifth Circuit similarly distinguished *Google* where, like here, the plaintiff alleges a credible First Amendment injury and a threat of enforcement. In *Braidwood*, the Fifth Circuit distinguished "the hazy application of the law in [*Google*]" and found First Amendment claims ripe.[79] Although plaintiffs had not been prosecuted by the EEOC for certain employment policies, the Fifth Circuit reasoned that a prior suit against another similarly-situated religious employer, coupled with plaintiffs' fear of prosecution for violating the same policies, were "sufficient facts

---

[74] ECF No. 16 ¶¶ 25–38.
[75] – F. Supp. 3d –, No. 24-cv-147, 2024 WL 1773197, at *15 (D.D.C. Apr. 12, 2024) *appeal filed*, 24-7059 (D.C. Cir.).
[76] *Id.* at *17.
[77] ECF No. 11-1; ECF No. 16-1; *supra* § IV(A).
[78] *See Speech First, Inc.*, 979 F.3d at 330–31 (collecting cases).
[79] 70 F.4th at 930–32.

to determine whether [the Plaintiffs'] policies entitle them to declaratory relief."[80] The same is true here. Because Defendant maintains the ability to enforce the CID or expand its scope and has a track record of targeting other nonprofits through enforcement actions, Las Americas' self-censorship is sufficient to entitle it to relief.

Las Americas presented verified allegations of the ongoing First Amendment effects the CID and investigation have had on its operations. These injuries come after a year in which Defendant has tried to shut down multiple similarly situated nonprofits. Defendant's arguments contravene both *Knick* and decades of prior cases, which conclude that a Section 1983 plaintiff with a constitutional injury need not await state court enforcement proceedings before bringing suit.

The other cases Defendant relies on—*Laird v. Tatum*, 408 U.S. 1, 13 (1972), *Reporters Committee for Freedom of Press v. AT&T*, 593 F.2d 1030, 1070 (D.C. Cir. 1978), and *Saline Parents v. Garland*, 88 F.4th 298, 308 (D.C. Cir. 2023)—also fail to support his arguments.[81] The *Laird* case fails to offer support for the same reasons as *Clapper* discussed above.[82]

Similarly, both D.C. Circuit cases Defendant cites rely on *Laird*. In those cases, the courts dismissed challenges to broad policies due to a lack of evidence the policies had ever been applied to the plaintiffs.[83]

---

[80] *Id.* at 931.
[81] ECF No. 21 ¶¶ 27–29.
[82] *See* 408 U.S at 11, 13 (finding the claimed injury rested on a "speculative apprehensiveness that the Army may at some future date misuse the information," but that the plaintiffs were not "presently or prospectively subject to the [challenged] regulations.").
[83] *Reps. Comm. for Freedom of Press*, 593 F.2d at 416 ("There have been no toll-record subpoenas directed at plaintiffs, and as far as the record indicates any other journalist[.]"); *Saline Parents*, 88 F.4th at 305 ("Appellants' allegations simply do not plausibly support the belief that they are targets of the DOJ.").

Finally, Las Americas' claims have significant differences from these cases—and from *Clapper*. Unlike the plaintiffs who were not specifically targeted in the cited cases, Las Americas received a CID from Defendant specifically accusing Las Americas of providing fraudulent legal services.[84] Defendant has initiated similar retaliatory and baseless actions against other organizations like Las Americas. Thus, no speculation exists—Defendant has targeted Las Americas, unlike the plaintiffs in *Laird*, *Reporters Committee for Freedom of Press*, *Saline Parents*, and *Clapper*.

2. *The Hardships Favor Resolving the Case.*

On the second prong, which Defendant neither acknowledges nor addresses, the Court must consider the hardship of withholding this Court's consideration.[85] And the hardships favor resolving this case.[86]

Like the EEOC in *Braidwood*, Defendant suggests he "has not in any way restricted or regulated [Las Americas'] activities."[87] The Fifth Circuit rejected that argument, holding the risk of prosecution sufficiently created a hardship.[88] Las Americas faces more than just a risk of prosecution. Defendant issued the CID directly to Las Americas and did so in the context of his other crusades against immigrant service providers. Defendant attempts to force Las Americas to choose between Scylla and Charybdis: either continue its protected activity and face the Attorney General's attacks or self-censor and forfeit its First Amendment rights.[89]

---

[84] The DTPA permits Defendant to investigate fraudulent or deceptive business practices. *See* Tex. Bus. & Comm. Code §§ 17.46(a)-(b), 17.62. Thus, Defendant had no choice but to make the frivolous claim about fraudulent or deceptive services, otherwise its use of the DTPA would have been an improper use of his authority, and the CID would have been impermissible.

[85] *Braidwood Mgmt., Inc.*, 70 F.4th at 926.

[86] *Id.* at 931 (holding that the self-censorship and the credible risk of prosecution were sufficient to establish ripeness); *see Ondrusek*, 2024 WL 5102221, at *4, *10.

[87] ECF No. 21 ¶ 29 (citation omitted).

[88] *Braidwood Mgmt., Inc.*, 70 F.4th at 931.

[89] *See id.* at 922 (citation omitted).

Defendant disingenuously trivializes Las Americas' injury in an attempt to convince the Court that Las Americas' expression does not deserve protection. Defendant's disagreement with and disdain for Las Americas' protected expression does not change the fact that the hardships strongly favor resolving the case to prevent irreparable harm to Las Americas and to protect its First Amendment rights.[90]

### C.  Las Americas' Case Remains Live and Justiciable Because Defendant Can Move to Enforce the CID or Expand Its Scope.

Defendant alleges Las Americas' response to the CID renders this matter moot. Defendant is wrong.[91] The Court can still grant relief for the reasons asserted in Plaintiff's status report.[92] Importantly, despite Defendant's representations, enforcement of the CID remains available under the DTPA.

Defendant cites *Baldridge v. United States*, 406 F.2d 526, 527 (5th Cir. 1969) to support the argument that compliance with a subpoena moots a case.[93] However, the Fifth Circuit has distinguished *Baldridge*, holding a case is not moot when some form of relief remains available.[94]

In *Gibson Products of San Antonio, Inc.*, the defendant "substantially complied" with multiple subpoenas, and the Federal Trade Commission indicated it would "not pursue further proceedings."[95] And yet, the Fifth Circuit held the case was not moot because the Court could "require[] the FTC to return the subpoenaed documents and to forbid use of the material in the

---

[90] *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., U.S. Dep't of Lab.*, 17 F.4th 604, 618–19 (5th Cir. 2021).
[91] ECF No. 21 ¶ 42.
[92] ECF No. 11, at 3–13.
[93] ECF No. 21 ¶ 42.
[94] *See F.T.C. v. Gibson Prods. of San Antonio, Inc.*, 569 F.2d 900, n. 5 (5th Cir. 1978) ("Although in *Baldridge* […], we held an appeal moot following compliance with an Internal Revenue Summons […], this case is not controlling here because it was not clear in *Baldridge* that further relief was available").
[95] 569 F.2d at 903.

adjudicatory hearing." *Id.* (citation omitted). In other words, some form of relief remained available. Similarly, here, the Court can grant relief by preventing Defendant from continuing to coerce Las Americas into self-censorship by enforcing the CID or expanding the CID's scope.[96]

Moreover, a recent Supreme Court decision demonstrates Las Americas' CID response does not render this case moot.[97] In *Fikre*, the FBI violated plaintiff's due process rights by placing him on a No Fly List.[98] After removing plaintiff from the No Fly list and providing a declaration that he would not be placed on the list again "based on the currently available information," the government argued the case was moot.[99] The Supreme Court disagreed: "the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past."[100]

Here, the facts against mootness are even stronger than those in *Fikre*. In contrast to *Fikre*, Defendant has acknowledged enforcement may be forthcoming: "if and when, the Attorney General does seek enforcement."[101] Unlike *Fikre*, Defendant has made no effort to end the complained-of conduct. Consequently, this case is not moot. Thus,

---

[96] Defendant also cites *Office of Thrift Supervision Department of Treasury v. Dobbs*, 931 F.2d 956 (D.C. Cir. 1991) to support this argument. *Dobbs* is easily distinguishable and does not control. Unlike here, the plaintiff in *Dobbs* offered no evidence of a pattern or history of subpoena enforcement to support the likelihood of future action. As explained above, the likelihood of Defendant challenging Las Americas' compliance in state court, or using the insight gleaned from Las Americas' compliance against other persons or organizations, is far from speculative. Defendant has harassed similarly situated organizations after publicly expressing his intent to intimidate them. *Dobbs* did not present such an orchestrated campaign of harassment.

[97] *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024).

[98] *Id.* at 238–39.

[99] *Id.* at 242.

[100] *Id.*

[101] ECF No. 21 ¶ 31; *see also Speech First, Inc.*, 979 F.3d at 328 ("That general rule is not absolute, but '[v]oluntary cessation of challenged conduct' moots a case 'only if it is absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur.'") (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)).

Finally, even if the Court does not ultimately provide injunctive relief, the Court could still provide relief through a declaratory judgment.[102] Under the Declaratory Judgment Act, the question of mootness becomes "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issue of a declaratory judgment."[103] To show an actual controversy, the dispute "must be definite, concrete, real and substantial."[104]

Here the facts and circumstances, as discussed in Section VI.A, show a controversy existed when the case was filed.[105] Thus, this Court could provide relief by: (1) issuing a Declaratory Judgment finding Defendant has violated Las Americas' First Amendment rights and eliminating future curtailment of that protected expression; or (2) entering an order preventing Defendant from enforcing or expanding the scope of the CID.

Because Defendant can still enforce or expand the scope of the CID and because the First Amendment injuries continue, this case is not moot. The Court should, thus, deny Defendant's Motion to Dismiss.

## V.    CONCLUSION

For the reasons discussed, this Court should deny Defendant's Motion to Dismiss as Las Americas has Article III standing to bring this suit, its claims are ripe for judicial review, and this case remains live and justiciable.

---

[102] *Steffel v. Thompson*, 415 U.S. 452, 468 (1974) ("[A] federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." (quoting *Zwickler v. Koota*, 389 U.S. 241, 254 (1967)).
[103] *Connell v. Shoemaker*, 555 F.2d 483, 486 (5th Cir. 1977) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).
[104] *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019).
[105] *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) ("The declaratory judgment plaintiff must establish that [the actual controversy] requirement was satisfied at the time the complaint was filed—post-conduct filing is not relevant." (citation omitted)).

Dated: December 23, 2024

Respectfully submitted,

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
Texas Bar No. 13922550
Scott C. Thomas
Texas Bar No. 24046964
Michael A. Bittner  Texas
Bar No. 24064905
Ashley J. Wright
Texas Bar No. 24100390
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
scthomas@winston.com
mbittner@winston.com
ajwright@winston.com

Erin D. Thorn
Texas Bar No. 2409326
Daniel Hatoum
Texas Bar No. 24099136
Kassandra Gonzalez
Texas Bar No. 24116439
**TEXAS CIVIL RIGHTS PROJECT**
P. O. Box 17757
Austin, Texas 78760
Telephone: (512) 474-5073 ext. 182
Fax: (512) 474-0726
aron@texascivilrightsproject.org
daniel@texascivilrightsproject.org
kassandra@texascivilrightsproject.org

Travis Walker Fife
Texas Bar No. 24126956
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 1108
Houston, TX 77251
Telephone: (832) 971-8984 ext. 186

20

Telephone: (832) 554-9981
travis@texascivilrightsproject.org

Counsel for Las Americas Immigrant Advocacy
Center


## CERTIFICATE OF SERVICE

On December 23, 2024, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case filing

system of the court. I hereby certify that I have served all counsel of record electronically or by

another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Ashley J. Wright*_____
Ashley J. Wright